**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carl N. DeCICCO, Defendant–Appellant.**

No. 89–2080.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1990.

Decided April 20, 1990.

---

Thomas M. Daly, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Renee E. Schooley, Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The defendant, Carl N. DeCicco, entered into a plea agreement with the government in which he pled guilty to four counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and § 2 (Counts 1–4) and four counts of wire fraud in violation of 18 U.S.C. § 1342 and § 2 (Counts 5–8). In exchange for his plea, the government recommended in the plea agreement that he receive a sentence at the upper range of the applicable sentencing range based on the parties' calculations under the Sentencing Guidelines. At sentencing, the district court rejected the recommended sentence and sentenced the defendant to a higher sentence according to the Guideline calculations contained in the presentence report. The defendant raises two issues on appeal. He first alleges that he should be allowed to withdraw his guilty plea and plead anew because the trial court failed to comply with the requirements of Rule 11(e) when it accepted his guilty plea. The defendant also challenges the addition of two points to his offense level under the Guidelines based on the determination that

he was an "organizer" pursuant to § 3B1.1(c). We affirm the district court's refusal to permit the defendant to withdraw his guilty plea but remand for resentencing because the district court inappropriately determined that the defendant was an "organizer."

## I.

The defendant was indicted for operating several schemes in which he fraudulently obtained merchandise using a variety of deceitful tactics. DeCicco entered into a plea agreement with the government in which he pled guilty to four counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and § 2 (Counts 1–4) and four counts of wire fraud in violation of 18 U.S.C. § 1342 and § 2 (Counts 5–8). The signed plea agreement, which was submitted to the district court, provided that in exchange for the guilty pleas by the defendant, the government would recommend that he be sentenced at the upper end of the Guideline range from the calculations contained in the plea agreement for Counts 1–3. For Counts 4–8, which occurred prior to the enactment of the Sentencing Guidelines, the government agreed to recommend a sentence of 2 years on each count to run concurrent to each other but consecutive to the Guideline sentence imposed for Counts 1–3.

The plea agreement contained the parties' calculation of the defendant's applicable sentencing range under the Guidelines. The parties agreed that the defendant had an offense level of 12 and that the defendant's role in the offense was that of an organizer pursuant to § 3B1.1(c) of the Guidelines and therefore the offense level should be increased two levels to 14. The agreement further stated that the government recommended a two level reduction for the defendant's acceptance of responsibility pursuant to § 3E1.1(a). Finally, the parties agreed that the defendant had a criminal history category of IV. Based on these calculations, the applicable sentencing range was 21–27 months.

The plea agreement also stated that the defendant understood that the district court did not participate in the plea agreement and was not bound by any recommendations of the government and that the defendant understood that he would not be allowed to withdraw his guilty plea once entered. The district court accepted the defendant's plea.

A presentence report was subsequently prepared which arrived at an applicable sentencing range that was higher than that reached by the parties in the plea agreement. The presentence report calculated the defendant's offense level as 13 and his criminal history category as VI, resulting in an applicable range of 33–41 months. The defendant filed objections to these calculations. The district court granted several of his objections, reducing his criminal history category to V, but denied his objection to the calculation of his offense level which characterized him as an organizer resulting in the addition of two levels to his computation. At sentencing, the district court rejected the parties' recommended sentence in favor of the calculations contained in the presentence report and sentenced the defendant to 37 months on Counts 1–3 (to run concurrently with each other), 5 years on Count 4 (to run concurrently to Counts 1–3), and 5 years on Counts 5–8 (to run concurrently with each other but consecutive to Counts 1–4). The defendant thereby received a sentence of 13 years and 1 month, which was above the 4 year 3 month total recommended by the government in the plea agreement but well within the sentencing ranges provided for in 18 U.S.C. § 1343 and § 2314.

DeCicco raises two claims on appeal. First, he alleges that the district court failed to comply with the requirements of Rule 11 by imposing a sentence materially different from the terms of the plea agreement without advising him at the time of the plea that he would not be allowed to withdraw his plea if the court rejected the plea agreement. Second, he contends that the trial court erred in computing his offense. level by adding two points for his role in the offense as an organizer. We address these claims in turn.

### A.

■ Fed.R.Crim.P. 11 contains the procedures governing plea agreements. Subsection (e)(1)(B) permits the government to agree to make a sentencing recommendation to the court with the understanding that such recommendation shall not be binding on the court. Subsection (e)(2) mandates that when the government makes a recommendation pursuant to subsection (e)(1)(B), the court "shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea."

The defendant contends that the district court failed to comply with the requirements of Rule 11(e)(2) by neglecting to inform him that should the court decide to depart from the recommended sentence, the court would not be required to allow him to withdraw his guilty plea. To support his position, DeCicco maintains that the court implied that he would be sentenced within the recommended range by stating to him that "[s]o really I guess the important thing is that you're looking at about four years in the penitentiary here. Maybe a little more, maybe a little less. Do you understand that?" The government concedes that the plea agreement was an (e)(1)(B) agreement and that the dictates of subsection (e)(2) apply, but contends that the requirements of (e)(2) were met, and in the alternative, if they were not, any error was harmless pursuant to Rule 11(h).

While any noncompliance with Rule 11 is reversible error, *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curium), the test for reversal on appeal is "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *Id.; United States v. Ray*, 828 F.2d 399 (7th Cir. 1987). We therefore examine all the circumstances surrounding the plea to determine whether the defendant was informed of his rights.

We begin by noting that the defendant has a college education and had sufficient aptitude to carry out the rather complex scheme which resulted in his conviction.

The signed plea agreement expressly stated that the defendant "understands that the court did not participate in this plea agreement and is not bound by any recommendations of the Government," and further, that he "will not be allowed to withdraw his plea of guilty once entered." Paragraph 4 stated that the defendant "has been advised and does fully understand ... the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law ... [and] that if he pleads guilty he will waive his right to persist in a plea of not guilty...." The agreement was signed by the government, DeCicco and his attorney and at sentencing DeCicco stated that he had read the agreement "very carefully" with his attorney and understood its contents. Further, the court specifically told the defendant that the court was not a party to the plea agreement and that the court would "decide what the sentence would be. It may be what's in the [plea agreement]. It may be more than that. It may be less than that." The court also told him that he faced possible exposure of 60 years and several millions of dollars in fines. In short, both the plea agreement and the trial court at sentencing made clear what is required by (e)(2); that the court is not bound by the plea agreement and in the event that the court rejects the agreement, the court will not be required to allow the defendant to withdraw his plea. We find that based on the totality of the circumstances, the defendant was informed of his rights and thus the requirements of Rule 11 were satisfied.

At oral argument, defense counsel urged us to attach talismanic qualities to the precise language of Rule 11(e)(2), in effect arguing that a defendant should not be bound by a plea agreement where the trial court fails to recite the precise language contained in the rule. "While district court's are well advised to precisely track the language of Rule 11," *Frazier*, 705 F.2d at 906, the failure to do so is not necessarily fatal. "Matters of reality, and not mere ritual, should be controlling." *United States v. Wetterlin*, 583 F.2d 346, 354 (7th Cir.1978), *cert. denied*, 439 U.S.

1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Where, as here, the totality of the circumstances demonstrates that the defendant was informed of his rights, we will not reverse a trial court's refusal to permit a defendant from withdrawing from a plea agreement.

## B.

DeCicco's second claim on appeal concerns his sentence under the Sentencing Guidelines. He challenges his sentence based on the contention that the district court erred in raising his offense level by two levels based on the determination that he was an "organizer, supervisor or manager in any criminal activity" pursuant to § 3B1.1(c).[1] The district court apparently increased DeCicco's offense level pursuant to § 3B1.1(c) based on the finding that he organized the numerous unknowing victims of his fraudulent schemes as well as unwitting family members who provided him with transportation home from one of his fraudulent transactions. DeCicco maintains that § 3B1.1 is applicable only in situations where the offender organizes the services of criminally responsible participants rather than those of unknowing or unwitting actors. The government's position is that an offender can be deemed an organizer under § 3B1.1(c) even where the individuals involved lacked knowledge of the criminal nature of the offender's actions.

■ The question whether § 3B1.1(c) applies to DeCicco's conduct requires an interpretation of the scope of the guideline. It is therefore a question of law which we review *de novo*. 18 U.S.C. § 3742(e) and (f). *See also United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.1989); *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989); *United States v. Werlinger*, 894 F.2d 1015, 1017 (8th Cir.1990); *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989). Section 3B1.1, which is entitled "Aggravating Role," permits the district court to raise a defendant's offense level "[w]hen an offense is committed by more

than one participant" and if the defendant played an aggravating role in the offense. *United States v. Herrera*, 878 F.2d 997, 999 (7th Cir.1989). An offender plays an aggravating role in the offense if he or she "was an organizer, leader, manager or supervisor" of criminal activity. *Mejia–Orosco*, 867 F.2d at 220. If the defendant was an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive, the offense level is increased by four levels. § 3B1.1(a). If the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive, a three-level increase is warranted. § 3B1.1(b). Finally, "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [3B1.1](a) or [3B1.1](b)," a two-level increase is warranted. § 3B1.1(c).

■ Based on our reading of § 3B1.1 and its attendant Introductory Commentary, Background Commentary and Application Notes, we find that the Sentencing Commission intended § 3B1.1 to apply only to situations where the offender organizes or leads criminally responsible individuals. The Introductory Commentary to § 3B1.1 limits the application of this guideline to offenses "committed by more than one participant." Participant is defined by the Application Notes as any "person who is criminally responsible for the commission of the offense, but need not have been convicted." Therefore, the leadership or organization of criminally responsible individuals is required for § 3B1.1 to apply. This conclusion is supported by the Background Commentary which explains that § 3B1.1 "provides a range of adjustments to increase the offense level based upon the *size of the criminal organization (i.e., the number of participants in the offense)* and the degree to which the defendant was responsible for committing the offense," and that § 3B1.1(c) is intended for cases involving *"relatively small criminal enterprises."* (emphasis added). The italicized portions indicate that § 3B1.1 requires that the of-

---

1. For the purposes of our discussion concerning § 3B1.1, we use the general term "organizer" to refer to "an organizer, leader, manager, or supervisor."

fender be involved with fellow criminal actors. The varying degrees of punishment within § 3B1.1 are based on the number of criminally culpable actors the offender organizes or manages.

The Sentencing Commission did not intend that the organization of unknowing outsiders be entirely irrelevant to § 3B1.1. Rather, the Commission provided for its consideration in a very narrow set of circumstances. § 3B1.1(a) and (b) provide for varying degrees of enhancement of the defendant's offense level based on the defendant's degree of involvement in criminal activity that "involved five or more participants *or was otherwise extensive.*" In defining "otherwise extensive," the Application Note to § 3B1.1 states that when there are fewer than five participants as required by (a) and (b), the use of "unknowing outsiders" may be considered. The "otherwise extensive" language was omitted from subsection (c). This omission demonstrates the Commission's intention that subsection (c) apply only to the organization of criminally responsible actors. The Application Note provides that "a fraud that involved only three participants but used the unknowing services of many outsiders could be considered otherwise extensive." This example contemplates the presence of criminal actors along with any unknowing individuals for § 3B1.1 to apply. The Commission intended, therefore, that the court be permitted to apply (a) and (b) in a limited set of circumstances where the defendant organized or managed both unknowing outsiders as well as criminally responsible outsiders. The Note supplies no support for the proposition that the section can apply where the offender uses solely the services of unknowing outsiders.[2]

Two circuits have previously addressed the scope of § 3B1.1. Our holding that § 3B1.1 applies only to the organization of criminally responsible individuals is in ac-

cord with that of the Sixth Circuit in *United States v. Carroll,* 893 F.2d 1502 (6th Cir.1990). In that case, the defendant had unknowingly conspired with undercover law enforcement officers to escape from prison. The court relied primarily on the language of the Introductory Commentary to hold that § 3B1.1 requires that a defendant engage in criminal activity "with at least one other criminally culpable person." *Id.* at 1504. The court reasoned that § 3B1.1 was inapplicable because the undercover officers lacked the culpability to be "participants" as required by the Introductory Commentary.

In *United States v. Anderson,* 895 F.2d 641 (9th Cir.1990), a divided panel of the Ninth Circuit reached a different conclusion than the one we reach today. In *Anderson,* the defendant duped a friend into unknowingly driving a getaway car after the defendant robbed a bank. The court held that the defendant was properly classified as an organizer, leader, manager or supervisor pursuant to § 3B1.1 despite his co-defendant's unawareness of the criminal enterprise until after the commission of the unlawful act. The court began by noting that subsections (a) and (b) of § 3B1.1 contain the term "participant," thus requiring the supervision of criminally culpable individuals. The court then reasoned that since subsection (c) omitted the term "participant," the leadership of criminal actors was not required for that section to apply. In reaching this conclusion, the court discounted the Commentary to the Guidelines as "much like legislative history," and instead relied on the "plain language of the provision itself" because the language of the guideline was clear. The dissent took issue with the court's rejection of the Commentary, asserting that it is an "integral part of the Guidelines package" which cannot be ignored. Based on the Commentary, the dissent found that the Sentencing Commission intended § 3B1.1

---

**2.** We note by way of clarification that our decision today does not conflict with our recent conclusion in *United States v. Herrera,* 878 F.2d 997 (7th Cir.1989). The key issue in that case was whether Herrera's control of his wife was sufficient for him to be considered an "organiz-

er." We held that it was. The criminal culpability of Herrera's wife was not before us as we assumed that she was a fellow criminal actor. The defendant did not contend otherwise. The issue we decide today was therefore not presented in *Herrera.*

to apply only to the leadership of criminally culpable individuals.

We agree with the dissent in *Anderson* that courts cannot ignore the Commentary and Notes when applying the Guidelines. Courts are required to consider the Commentary in interpreting and applying the Guidelines. Congress had mandated that "[t]he court, in determining the particular sentence to be imposed, shall consider ... any pertinent policy statement issued by the Sentencing Commission ..." 18 U.S.C. § 3553(a). The Commentary is just such a policy statement as the Commission has mandated that it "is to be treated as the legal equivalent of a policy statement." Guidelines § 1B1.7. *United States v. Guerrero*, 894 F.2d 261, 265 n. 2 (7th Cir. 1990); *United States v. Franz*, 886 F.2d 973, 977 n. 2 (7th Cir.1989). *See also United States v. Ofchinick*, 877 F.2d 251, 257 (3rd Cir.1989); *United States v. Smeathers*, 884 F.2d 363, 364 (8th Cir.1989). Reading § 3B1.1 in light of its Commentary and Notes yields the conclusion that the Sentencing Commission intended that it apply to situations where an offender organizes criminally responsible individuals.

## II.

We affirm the district court's refusal to permit the defendant to withdraw his guilty plea. The district court erred, however, in raising the defendant's offense level based on the determination that he was an organizer pursuant to § 3B1.1(c) because that section applies only where the offender organizes at least one criminally responsible individual. Accordingly, the sentence is vacated and we remand to the district court for resentencing.