**UNITED STATES of America, Appellee,**

v.

**William A. DIETZ, Defendant, Appellant.**

**No. 91–1321.**

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1991.

Decided Nov. 27, 1991.

---

Arlene C. Halliday, Boothbay, Me., for defendant, appellant.

Victor A. Wild, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for U.S.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant William A. Dietz pled guilty to twenty-eight counts of fraud, conspiracy, and the like, implicating, *inter alia*, 18 U.S.C. §§ 2, 371, 1001, 1341 (1988) and 42 U.S.C. §§ 408(g)(2), 1383a (1988). The district court computed the guideline sentencing range (GSR) and sentenced Dietz within it.[1] On appeal, Dietz challenges the court's determination of the GSR in three respects. Finding the assigned errors to be lacking in merit, we affirm.

## I. BACKGROUND

Inasmuch as the underlying conviction resulted from a guilty plea, we draw the facts necessary to place this appeal into perspective from the uncontested portions of the Presentence Investigation Report (PSI Report), *see* U.S.S.G. § 6A1.2, and the transcript of the sentencing hearing, *see United States v. Iguaran–Palmar*, 926 F.2d 7, 10 (1st Cir.1991).

---

1. Sentencing took place on February 13, 1991. Dietz was sentenced to thirty-five months in prison (near the GSR's midpoint), followed by three years of supervised release. He was also directed to make restitution in the amount of $161,477.93 and ordered to pay a special assessment of $1,400.

Appellant's youngest child, Gregory, is profoundly disabled as a result of birth defects and subsequent complications. In 1977, shortly after Gregory was born, the appellant filed forms with the Social Security Administration (SSA) indicating, falsely, that he was providing no income to the familial household and that he did not anticipate providing any income in the foreseeable future. The following year, Dietz's wife, Irene, filed forms with the SSA indicating that Dietz no longer lived with the family or provided any support, and that his whereabouts were unknown. These statements, too, were apocryphal. In each subsequent year up to and including 1989, Mrs. Dietz submitted forms perpetuating the same spurious scenario. Throughout this period, the appellant, although venturing out of state on occasion, resided primarily in the family home. He and his wife regularly received legitimate income from wages (some earned under an alias) and not-so-legitimate income from falsified unemployment claims. All told, Mr. and Mrs. Dietz euchred $59,498.93 from the SSA by means of their meretricious conduct.[2]

During the latter part of this time frame, Dietz also exercised his considerable talent for cozenage by masterminding another scheme, this time defrauding not only the federal government, but seven state employment security agencies as well. In the course thereof, appellant, his wife, and their son, Christopher, filed false unemployment claims. Christopher and his brother, Kenneth, assisted in retrieving the benefit checks from a network of post office boxes, many rented under pseudonyms. Dietz's daughter-in-law, Lisa, who was employed from time to time by different banks, used her position to help in cashing the checks. In all, the unemployment insurance scam netted a total of $158,717.[3]

## II. ROLE IN THE OFFENSE

 Appellant's first assignment of error concerns the district court's enhancement of his offense level based on the pivotal role he played in spinning the web of familial fraud. Because role-in-the-offense determinations are necessarily fact-specific, "considerable respect [must] be paid to the views of the nisi prius court." *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990). Hence, absent mistake of law, we review such determinations only for clear error. *See United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991); *United States v. McDowell*, 918 F.2d 1004, 1011 (1st Cir.1990); *United States v. Diaz-Villafane*, 874 F.2d 43, 48 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Careful perscrutation of the record below reveals no error, clear or otherwise; to the contrary, the district court was fully justified in rewarding the appellant's manipulative genius by conferral of the enhancement.

U.S.S.G. § 3B1.1(a) provides for an increase of four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." *See, e.g., McDowell*, 918 F.2d at 1011; *United States v. Preakos*, 907 F.2d 7, 9 (1st Cir.1990) (per curiam). At the sentencing hearing in the instant case, Dietz did not contest the characterization of his role as that of an organizer/leader. Rather, while admitting that the circumstances at bar "technical[ly] fit" within the language of U.S.S.G. § 3B1.1(a), he contended that the provision was inapposite because his crimi-

---

**2.** To be sure, appellant might legitimately have been entitled to receive some amount of money for Gregory's care through the social security supplemental income program during this time period. The record does not contain a reliable calculation of the difference between Dietz's likely entitlement and the admittedly larger amount that he actually received by fraudulent means.

**3.** The record reflects that the appellant himself made sixteen ersatz claims, using sixteen different social security numbers and fourteen cognomens, against six states. These claims netted him $101,745. Four claims filed by Irene Dietz accounted for $23,317. Six claims filed by Christopher Dietz brought in the remaining $33,652. (Although these figures aggregate $3 less than the total take envisioned in the PSI Report, the difference scarcely seems significant.)

nal activities implicated too limited a cast of characters to qualify for the four-level enhancement.[4] In his view, the individuals who were innocently involved in consummating the fraud (e.g., claims processors employed by the affected benefit programs), should not have been considered in gauging the schemes' scope—and, without those persons, too few participants were involved. The district court overruled Dietz's objection, holding that his criminal activities were sufficiently panoramic to merit the four-level increase.[5] We agree.

■ At the root of appellant's objection are two problematic contentions: (1) that there must be at least five persons involved before a criminal scheme can be deemed "extensive," and (2) that only those individuals who are active participants in the scheme may be aggregated for purposes of U.S.S.G. § 3B1.1(a). In mounting these contentions, the appellant relies almost exclusively on *United States v. DeCicco*, 899 F.2d 1531 (7th Cir.1990). While we have no quarrel with Judge Flaum's well-reasoned opinion in *DeCicco*, that opinion, like a wobbly lamppost with a burnt-out bulb, furnishes neither support nor illumination for Dietz's position. *DeCicco* stands for the unremarkable proposition that, in order for U.S.S.G. § 3B1.1 to apply, the defendant, who himself is to be counted as a criminally culpable participant, *see Preakos*, 907 F.2d at 10, must have "organize[d] at least one [other] criminally responsible individual." *DeCicco*, 899 F.2d at 1537.[6] There is simply no plausible way to read *DeCicco* as requiring a defendant to exercise hegemony over four criminally responsible individuals (who, when combined with the defendant himself, would achieve a total of five participants) as a prerequisite to applying

section 3B1.1(a). Indeed, so anfractuous an interpretation of the guidelines would effectively nullify the "otherwise extensive" clause of U.S.S.G. § 3B1.1(a). As the Sentencing Commission's commentary makes clear, so long as a defendant and at least one other criminally responsible person are involved in the offense of conviction, the sentencing court is free to consider the use of unwitting outsiders in determining if a criminal enterprise is "extensive" within the contemplation of section 3B1.1:

> In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

U.S.S.G. § 3B1.1, comment. (n.2). Furthermore, once the irreducible minimum of two (the defendant and some other criminally responsible participant) has been met, the extensiveness of a criminal activity is not necessarily a function of the precise number of persons, criminally culpable or otherwise, engaged in the activity. Rather, an inquiring court must examine the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme.

This is not to say that a head count is either irrelevant or unimportant. In most instances, the greater the number of people involved in the criminal activity, the more extensive the activity is likely to be. Thus, while we do not feel any compulsion to determine the number of participants in

---

4. If a defendant is an organizer or leader of a smaller, less farflung criminal cabal, the guidelines dictate an upward adjustment of two levels. *See* U.S.S.G. § 3B1.1(c).

5. The appellant also argued below that applying section 3B1.1(a) in his case would produce an impermissible "double counting" effect because his offense level had already been boosted by two levels under U.S.S.G. § 2F1.1(b)(2), a separate guideline provision which directs an increase when crimes rooted in deceit involve "more than minimal planning," or "a scheme to

defraud more than one victim." This ground not having been pursued on appeal, we deem it abandoned. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (points not briefed or argued are waived), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

6. Although *DeCicco* arose under U.S.S.G. § 3B1.1(c), the Seventh Circuit's discussion of the need for involvement of at least one other criminally culpable individual spanned all three subsections of section 3B1.1. *See DeCicco*, 899 F.2d at 1536.

these criminal schemes with exactitude, we think it is significant that the offenses of conviction involved the appellant himself, three other criminally culpable individuals (Irene, Christopher, and Lisa Dietz, all of whom were found guilty of charges arising out of the schemes in question), Kenneth Dietz,[7] and countless employees of the government offices that processed the bogus claims. When these sheer numbers are coupled with other relevant facts—the course of criminal activity spanned twelve years, crossed into seven states,[8] utilized many fictitious identities, infiltrated two distinct sets of programs, and snared eight different governmental agencies in its intricately spun web—extensiveness becomes apparent. Unless ordinary language is to lose all meaning, the district court did not err in finding that Dietz's course of conduct was sufficiently extensive to warrant a four-level increase.

## III. AMOUNT OF LOSS

█ Appellant's second ground for appeal concerns the eight-level upward adjustment which the district court imposed because more than $200,000 was extracted from public coffers through the appellant's machinations. See U.S.S.G. § 2F1.1(b)(1)(I) (in respect to fraud crimes, add eight levels for losses ranging from $200,000 to $350,000). We need not reach the substance of the appellant's argument because his right to appellate review has not been preserved. We explain briefly.

In his written objections to the PSI Report and at sentencing, Dietz contested the loss calculation on the basis that, if the money legitimately obtainable from the SSA on Gregory's behalf were subtracted

from the money fraudulently obtained, the net amount of the loss would be less than $200,000. He did not, however, proffer any reliable calculation of the benefits that Gregory might lawfully have been eligible to receive. See supra note 2. The district court rejected Dietz's asseveration, ruling that the loss calculation need only be approximate, given the available information; that the methodology followed in the PSI Report (which did not differentiate between fraudulently obtained and legitimately obtainable benefits) was satisfactory; and that the Report's estimate of the loss was sufficiently accurate to be relied upon for sentencing purposes. See U.S.S.G. § 2F1.1, comment. (n. 8) (sentencing court "need only make a reasonable estimate of the range of loss, given the available information"); see also U.S.S.G. § 6A1.3 (sentencing court may consider pertinent information possessing "sufficient indicia of reliability to support its probable accuracy"). In his appellate brief, Dietz failed to renew this objection. He thereby waived it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1814, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

█ In lieu of the point previously presented and abandoned, Dietz now seeks to challenge the district court's loss computation on two new bases. First, he argues that, when his wife fed the SSA false information concerning his whereabouts and level of support, she embarked on a scheme distinct from his own fraudulent conduct; thus, Dietz theorizes, the profit accruing from her "separate" scheme should not be counted against him. Second, he asserts that the funds which his son, Christopher,

---

7. The district court declined to classify Kenneth Dietz as criminally culpable notwithstanding his participation in the collection and cashing of fraudulently procured checks. But as we have pointed out, a participant need not be criminally culpable before his presence can be factored into the section 3B1.1(a) calculus. By the same token, although the district court did not list all the participants in the criminal activity by name, there was no need to do so. Given that at least three criminally responsible individuals other than the appellant were readily identifiable, and that the accouterments of extensiveness were apparent, no more was exigible.

8. At oral argument, the appellant's counsel stressed that the appellant had sometimes been physically present in other states for reasons unrelated to effectuation of the fraudulent unemployment insurance scheme, thus setting the stage for the involvement of so many different agencies. It seems to us immaterial, however, whether Mohammed went to the mountain, or the mountain to Mohammed. We cannot fathom how the peripatetic nature of Dietz's existence might undermine the district court's finding of extensiveness.

obtained through fraudulent unemployment insurance claims while in college likewise resulted from an independent frolic, the avails of which should not be laid at Dietz's doorstep. These neoteric arguments bear no substantial relation to the basis for objection raised by the appellant in the district court. That, then, ends the matter. We have repeatedly ruled, in connection with sentencing as in other contexts, that arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue. *See, e.g., United States v. Uricoechea–Casallas*, 946 F.2d 162, 166 (1st Cir.1991); *United States v. Pilgrim Market Corp.*, 944 F.2d 14, 21 (1st Cir.1991); *United States v. Morales–Diaz*, 925 F.2d 535, 540 (1st Cir.1991); *United States v. Fox*, 889 F.2d 357, 359 (1st Cir.1989). A criminal defendant, dissatisfied with the district court's rulings at sentencing yet persuaded that his original arguments lacked merit, cannot switch horses mid-stream in hopes of locating a swifter steed.

## IV. CRIMINAL HISTORY CALCULATION

■ Dietz's final lamentation focuses upon the addition of three points to his criminal history score. The district court assessed one point based on Dietz's prior conviction for nonsupport, *see* U.S.S.G. §§ 4A1.1(c), 4A1.2(c)(1), and two more points because Dietz was in the midst of a period of probation on the nonsupport conviction and, therefore, "committed the instant offense while under [a] criminal justice sentence." U.S.S.G. § 4A1.1(d); *see generally United States v. Gallego*, 905 F.2d 482, 483 (1st Cir.1990) (explaining operation of two-point enhancement). On appeal, Dietz contends that his conviction for nonsupport was constitutionally invalid because it was uncounselled and, moreover, analogizing to *Baldasar v. Illinois*, 446

U.S. 222, 222–24, 100 S.Ct. 1585, 1585–86, 64 L.Ed.2d 169 (1980) (per curiam), that an uncounselled misdemeanor conviction cannot be used to enhance a defendant's sentence in any manner. The record, however, forecloses the appellant from pursuing the possible applicability of *Baldasar*.[9]

In his written opposition to the PSI Report, Dietz objected to the probation officer's description of his conviction for nonsupport, stating that "at the time [he] entered a plea of guilty ... he was not represented by counsel.... [and] that ... entry of that plea was done under duress and by threat of immediate incarceration." In response to this objection, the PSI Report was revised. The amendment asserted that "[t]he defendant waived his right to counsel and represented himself." The inclusion of this statement in the PSI Report cloaked the stated fact with a sufficient indicium of reliability to support its accuracy and warrant reliance by the sentencing court. *See United States v. Figaro*, 935 F.2d 4, 8 (1st Cir.1991); *see also* U.S.S.G. § 6A1.3(a). Put another way, the statement met the government's threshold burden, requiring Dietz, at the very least, to put the waiver-of-counsel question in issue. *See United States v. Unger*, 915 F.2d 759, 761 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991). Despite the district court's probing, the appellant did not take up the gantlet. He neither denied that he had waived the right to counsel nor challenged the voluntariness of the waiver. Rather, he responded to this new datum by conceding that the prior conviction came within U.S.S.G. § 4A1.2(c)(1) (cataloging, *inter alia*, misdemeanor convictions which may be counted in computing criminal history scores),[10] and urged the court to depart downward because the long probationary sentence earlier imposed for nonsupport

---

**9.** We have previously refrained from a gratuitous exploration of the interrelationship between the *Baldasar* doctrine and the federal sentencing guidelines, *see United States v. Unger*, 915 F.2d 759, 762 n. 4 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991), and we similarly decline to mount such an expedition today.

**10.** U.S.S.G. § 4A1.2(c)(1) specifically lists "[n]on-support" as a covered offense, so long as the sentence imposed "was a term of probation of at least one year or a term of imprisonment of at least thirty days...."

did not reflect a reasoned determination of the severity of the specific crime committed.

■ On appeal, Dietz wisely abjures any complaint anent the district court's failure to depart downward. *See United States v. Harotunian*, 920 F.2d 1040, 1044 (1st Cir. 1990) (defendant may not challenge district court's discretionary decision not to depart downward from the applicable GSR); *Ocasio*, 914 F.2d at 333 (same). He argues instead that his conviction was "uncounselled" because he did not freely waive an attorney's services. But, having eschewed any objection to the modified version of the PSI Report, it is too late for Dietz to claim on direct appeal, for the first time, that his waiver of counsel in the nonsupport case was constitutionally deficient. A defendant who disputes the factual premises relied upon by the government at sentencing must voice his disagreement then and there, or else forfeit the opportunity to challenge those facts at a later date. *See Iguaran–Palmar*, 926 F.2d at 10 (appellant has a responsibility to bring to the district court's attention any facts recited in the PSI Report that are in dispute); *see also* cases cited *supra* p. 55.

## V. CONCLUSION

We need go no further. Inasmuch as the appellant has failed to show any cognizable impropriety in the district court's construction of the GSR, his conviction and sentence must be

*Affirmed.*