35 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald MOSLEY, Defendant-Appellant.
 No. 93-1829.
 United States Court of Appeals, Seventh Circuit.
 Argued April 7, 1994.
Decided Sept. 14, 1994.
 
 Before POSNER, Chief Judge, BAUER, Circuit Judge, TINDER, District Judge*.
 ORDER
 Ronald Mosley was charged in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1) (Count 1), and for possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d) (Count 2). Though standing alone these offenses carry maximum sentences of imprisonment of only ten years, 18 U.S.C. Sec. 924(a)(2); 26 U.S.C. Sec. 5871, the Government sought the enhanced penalty provided by 18 U.S.C. Sec. 924(e)(1). The Government alleged Mosley had five prior violent felony convictions[1]--two more than the three necessary under Sec. 924(e)(1) to present Mosley with a mandatory minimum term of imprisonment of fifteen years if convicted and a maximum term of life imprisonment. See id. Mosley plead not guilty to both counts and his jury trial commenced on the morning of October 20, 1992. However, in the middle of the afternoon of the first day of trial, Mosley suddenly withdrew his not-guilty plea and agreed to plead guilty to Count 1 of the indictment and stipulate to the elements necessary to invoke the enhanced Sec. 924(e)(1) penalty in exchange for the Government's agreement to dismiss Count 2. This unexpected turn of events transformed the trial into an impromptu guilty-plea hearing. Outside the jurors' presence, the court placed Mosley under oath and initiated a discussion aimed at determining if his plea was voluntary and whether he understood the consequences of pleading guilty. See FED.R.CRIM.P. 11(c). Participating in the plea conference were both of Mosley's attorneys and the two Assistant United States Attorneys (AUSA) present. After a lengthy discussion the court, apparently satisfied the requirements of Rule 11 were met, accepted Mosley's guilty plea and set a sentencing date. However, between the plea and sentencing (and after acquiring a new attorney) Mosley filed a motion to withdraw his guilty plea. Mosley argued withdrawal of his plea was warranted because the court implied during the guilty-plea hearing he would receive the minimum possible sentence of fifteen years when in fact he faced the possibility of life imprisonment, making his plea involuntary, unknowing, or both. Mosley also believed the district court erred by failing to mention the possibility of supervised release following incarceration. After holding a hearing on Mosley's motion, the district court denied the motion and eventually sentenced Mosley to 235 months imprisonment followed by five years of supervised release. Mosley appeals the denial of the motion to withdraw his plea, asking that his conviction and sentence be vacated and his case remanded for trial.
 I. Analysis
 Once a guilty plea is entered, no defendant has an absolute right to withdraw that plea. United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir.1994); United States v. Groll, 992 F.2d 755, 758 (7th Cir.1993). Instead, "[i]f a motion for withdrawal of a plea of guilty ... is made before sentencing is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason...." FED.R.CRIM.P. 32(d) (emphasis added). The phrase "fair and just," being a loose standard rather than a mechanically applied rule, defies universal content, escapes precise delineation and instead derives content solely from the specific circumstances of each case. United States v. Trussell, 961 F.2d 685, 688 (7th Cir.1992). See generally City of Albany, Ill. v. FERC, 7 F.3d 671, 672 (7th Cir.1993) (explaining difference between rules and standards); United States v. Pinto, 875 F.2d 143, 145 (7th Cir.1989) (same). Consistent with this broad view of "fair and just," whether to allow a defendant to withdraw a guilty plea is a decision committed to the discretion of the district court and is disturbed on appeal only if that discretion is abused. United States v. Saenz, 969 F.2d 294, 296 (7th Cir.1992). For the same reason, plus the notion that district courts are simply better positioned to resolve factual disputes, Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985); Scandia Down Corp. v. Euroquilty, Inc., 772 F.2d 1423, 1428 (7th Cir.1985), the district court's factual findings made in the course of this decision are accorded a similar degree of deference and upheld unless clearly erroneous. Saenz, 969 F.2d at 296; United States v. Ray, 828 F.2d 399, 422 (7th Cir.1987), cert. denied, 485 U.S. 964 (1988). Compliance with Federal Rule of Criminal Procedure 11--the ritualistic roadmap for the guilty plea process--provides some evidence that the plea was proper, though even strict compliance with the rule is neither a sufficient, nor a necessary, condition for a valid guilty plea. See FED.R.CRIM.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."); LeDonne, 21 F.3d at 1423; United States v. DiCicco, 899 F.2d 1531, 1534 (7th Cir.1990). At bottom, the central question is whether the defendant, before pleading guilty, was informed of his rights and sufficiently understood the consequences of the guilty plea. LeDonne, 21 F.3d at 1423; United States v. Price, 988 F.2d 712, 719 (7th Cir.1993).
 A. Confusion Regarding Maximum Sentence
 Defendant's asserted "fair and just" reasons for excusing him from his plea are two-fold. First, he contends he only plead guilty because the court led him to believe, and he did indeed believe, he would receive nothing more than the minimum possible sentence of fifteen years in prison--somewhat less than the roughly twenty year sentence he eventually received. Mosley readily concedes, however, that the district court clearly informed him of the range of sentence he might receive during the guilty plea hearing, fifteen years to life, adequately satisfying the bedrock prerequisite for a valid guilty plea that a defendant be informed of the maximum possible penalty before pleading guilty. See FED.R.CRIM.P. 11(c) ("Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law...."); United States v. Knorr, 942 F.2d 1217, 1220 (7th Cir.1991). Once Mosley was sufficiently advised of the maximum penalty, his mistaken and unilateral belief of where, between the stated maximum and minimum penalty, his sentence would fall does not vitiate either the voluntary or intelligent nature of the plea. United States v. Scott, 929 F.2d 313, 315 (7th Cir.1991) (collecting cases).
 Admittedly some confusion arose during the guilty plea hearing as to the applicability of the sentencing guidelines in determining where, within the sentence range of fifteen years to life imprisonment, Mosley's sentence would fall. Relying on an estimate proffered by Mosley's attorney, the court initially opined that the Guidelines were inapplicable to Mosley because the relevant Guideline range would fall well below the minimum penalty of fifteen years. Tr. of Guilty Plea Hrg. of Oct. 20, 1992 at 7-9. However, immediately before this confusion the following exchange occurred:
 Court: The minimum sentence for a violation of Title 18, United States Code, Section 922(g)(1) is fifteen years' imprisonment. Do you understand that, sir?
 Mosley: Yes.
 Court: What is the maximum?
 [AUSA]: Life, Judge.
 
 
 1
 * * *
 
 
 2
 * * *
 
 
 3
 Court: The maximum is life. Do you understand that, sir?
 
 
 4
 Mosley: Yes.
 
 
 5
 Id. at 6-7. Mosley again indicated his understanding of the maximum penalty he faced following the discussion about the applicability of the sentencing guidelines:
 
 
 6
 Court: So, in effect, in return for pleading guilty to Count 1 the government will dismiss Count 2 and you will receive a sentence of fifteen years' custody.
 
 
 7
 [AUSA]: Judge, so it is clear. We have made no promise with respect to our sentencing recommendation, either. Fifteen years is a minimum. There is a range. We are free--
 
 
 8
 Court: What is the range?
 
 
 9
 [AUSA]: Fifteen to life.
 
 
 10
 Court. I know it is. But wouldn't I have to depart in some way?
 
 
 11
 [Def. Counsel]: You sure would.
 
 
 12
 [other Def. Counsel]: Yes, Judge, you would.
 
 
 13
 Court: Let me think this through, now. Since the guidelines don't come into play in that sense--however, if I were to go above fifteen years, I would have to find reason to depart upwards from the guidelines would I not?
 
 
 14
 [AUSA]: Frankly, Judge, we haven't looked at the guidelines. We just wanted to be clear that we are not making any promises with respect to sentencing.
 
 
 15
 Court: Do you understand that the maximum penalty for Count 1 is life imprisonment? Do you understand that?
 
 
 16
 Mosley: Now I do.
 
 
 17
 Court: But the government is not making any promises as to what sentence they may recommend. Now, it may be that they could come up with a theory for having a higher sentence than that. Do you understand that? The sentencing judge could, if he followed their recommendation, sentence you higher than fifteen years. Do you understand that?
 
 
 18
 Mosley: Yes.
 
 
 19
 Court: So, there is no guarantee as to what sentence you will ultimately receive. Do you understand that?
 
 
 20
 Mosley: Yes.
 
 
 21
 Id. at 17-19. Clear from these excerpts is the fact that Mosley was repeatedly warned he faced a maximum penalty of life in jail, Mosley was repeatedly warned there was absolutely no guarantee as to the length of sentence he would eventually receive, and Mosley repeatedly acknowledge his understanding of both these facts.
 
 
 22
 Immediately apparent upon a close reading of the transcript is the blatant contradiction between what Mosley said during the plea hearing and what he states now. During the hearing, while under oath, Mosley unequivocally acknowledged he understood the maximum penalty he faced as well as the inexistence of any guarantee where within the sentencing range he would be sentenced. Later, in attempting to slide out of his plea, Mosley is forced to contend that the transcript does not reflect his true state of knowledge at the time of the hearing and that he had no idea he might be sentenced to more than fifteen years. Self-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing--the latter are presumed true. United States v. Ellison, 835 F.2d 687, 693 (7th Cir.1987) ("[V]oluntary responses made by a defendant under oath before an examining judge [are] binding"). Accord United States v. Malave, 1994 WL 128658, * 3 (7th Cir. Apr. 14, 1994) (No. 93-2576); Knorr, 942 F.2d at 1220 ("[R]ational conduct requires that voluntary responses made by a defendant when entering a guilty plea be binding."); United States v. Scott, 929 F.2d 313, 315 (7th Cir.1991) ("To allow Scott to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas."). Of course, like any presumption this one may be overcome if the Defendant musters sufficient evidence proving his response did not truly reflect his understanding of the consequences of the plea. United States v. Caban, 962 F.2d 646, 649 (7th Cir.1992); Trussell, 961 F.2d at 689; Ellison, 835 F.2d at 693. All Mosley can rely on to dispel the presumption is the slight confusion at the sentencing hearing regarding the applicability of the sentencing guidelines. Though some initial uncertainty indeed existed, the Government's attorney quickly corrected this mistaken impression and the court emphatically noted that the applicable sentence range was fifteen years to life in prison--information which Mosley unequivocally acknowledged several times without the least hint of confusion, uncertainty, or hesitation. From this it is impossible to say the district court abused its discretion in concluding Mosley was well aware of his possible sentence when he plead guilty.
 
 B. Failure to Mention Supervised Release
 
 23
 Mosley also contends the district court erred in failing to advise him of the possibility of supervised release following incarceration. Though the district judge failed, without a doubt, to mention Mosley could receive a term of supervised release, the failure is at most harmless error. United States v. Saenz, 969 F.2d 294 (7th Cir.1992) held:
 
 
 24
 If, during the plea colloquy, the court complies with Rule 11(c)(1) to the extent of informing the defendant and determining his understanding of, inter alia, the maximum penalty under the statute but fails entirely to inform the defendant and explain the effect of any supervised release term--and the defendant's sentence in fact includes supervised release--the error [thus committed] does not necessarily mandate reversing the conviction and vacating the sentence, assuming the aggregate maximum period of incarceration under the actual sentence of imprisonment and supervised release cannot exceed the statutory maximum explained to the defendant.
 
 
 25
 Id. at 297 (emphasis added) (quoting United States v. Bachynsky, 934 F.2d 1349, 1359-60 (5th Cir.1991)). Because the imposed term of supervised release, when added to Mosley's prison sentence, did not exceed Mosley's maximum possible penalty--a nearly impossible task when the maximum penalty is life imprisonment--the district court's failure to inform him of the possibility of supervised release was harmless. Id. at 296-97.
 
 II. Conclusion
 
 26
 The decision of the district court denying Mosley's motion to withdraw his guilty plea is AFFIRMED.
 
 
 
 *
 The Honorable John D. Tinder, of the United States District Court for the Southern District of Indiana, is sitting by designation
 
 
 [1]
 Mosley's prior convictions, all committed in the State of Illinois, included attempted murder, armed robbery, aggravated kidnapping, and aggravated battery