**UNITED STATES of America, Plaintiff,**

**v.**

**Donald AUSTIN, Defendant.**

**No. 93 CR 169.**

United States District Court,
N.D. Illinois
Eastern Division.

May 30, 1996.

Matthew F. Kennelly, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL, for defendant.

Gillum Ferguson, Asst. U.S. Atty., United States Attorney's Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

In October 1993, Defendant Donald Austin was convicted after a jury trial for fraudulently selling counterfeit artworks through his chain of retail art galleries. At sentencing, the defendant's base offense level was increased four levels for organizing or leading a criminal activity with five or more participants. USSG § 3B1.1(a). On appeal, this enhancement was vacated and remanded for a limited resentencing determination: whether the § 3B1.1(a) enhancement nevertheless applies because Austin organized or led an "otherwise extensive" criminal activity. *United States v. Austin*, 54 F.3d 394, 405 (7th Cir.1995). Pursuant to Federal Rule of Criminal Procedure 32(c)(1), we explain below why § 3B1.1(a) does apply. We also explain our resolution of two additional motions filed by the defendant and decided at the resentencing hearing.

### I. Section 3B1.1

In order for § 3B1.1(a) to apply, the defendant must have organized or led at least one other "participant[ ]." § 3B1.1, comment. (n. 2); *see United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990). A "participant" must be "criminally responsible for the commission of the offense, but need not have been convicted," § 3B1.1, comment. (n. 1), or charged, *United States v. Nelson*, 5 F.3d 254, 258 (7th Cir.1993), *cert. denied*, 510 U.S. 1098, 114 S.Ct. 937, 127 L.Ed.2d 228

(1994). The government bears the burden of proving a putative participant's criminal responsibility by a preponderance of the evidence. *Austin*, 54 F.3d at 405. Furthermore, in determining the extensiveness of the criminal activity, the involvement of non-participants or "outsiders" must be considered. *Id.*

■ Based on the evidence proffered at trial, and the additional evidence introduced at the resentencing hearing, we find that Robert Galitz and Ronald Hunter were criminally responsible participants. Galitz worked for Austin from 1974 until 1986, eventually climbing from gallery director to vice-president of operations. At the resentencing hearing, Galitz testified one of his job duties was to "reassure" or "pacify" customers who telephoned in their complaints about the authenticity of works purchased from Austin Galleries. The defendant instructed Galitz to explain to the customers that Austin bought and sold works in good faith; if the customer specifically doubted a Dali work, Austin instructed, Galitz was to claim that Dali was always surrounded by controversy. By the end of Galitz's tenure at Austin Galleries, Galitz received several complaint telephone calls per week. More importantly, by that time, and indeed for a "couple" or "several" years prior to Galitz's termination, Galitz had serious doubts concerning the authenticity of works bought and retailed by Austin and it eventually "became apparent" that the work was fake.

Similarly, at trial Galitz testified as to his suspicions: art dealers complained to him about Austin's low prices, Trial Transcript (Tr.) at 141; Austin was able to obtain "too many" pieces, Tr. 142; no one from Austin Galleries' staff had the ability to authenticate the works, Tr. 143; and at least once, Galitz observed Austin place an acronym indicating the artist's authentication on a work, Tr. 144. Finally, Galitz admitted at the resentencing hearing that he aided in Austin's sales even after realizing that works were unauthentic;

we credit Galitz's explanation for participating in Austin's fraudulent scheme—to provide for his family. Based on the trial and resentencing hearing, the government has proved by a preponderance that Galitz intentionally defrauded the complaining customers by concealing and omitting material facts, *see United States v. Morris*, 80 F.3d 1151, 1160–61 (7th Cir.1996) (intent to defraud satisfied by material omissions), or at the least, Galitz consciously avoided guilty knowledge even though he harbored serious suspicions, *see United States v. Strickland*, 935 F.2d 822, 826 (7th Cir.) (conscious avoidance may constitute requisite state of mind under mail and wire fraud statutes), *cert. denied*, 502 U.S. 917, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991).

■ In addition, Austin employee Ronald Hunter qualifies as a participant under § 3B1.1. Hunter worked for Austin from 1978 until 1987, serving as a gallery director at local Austin Galleries stores in Illinois, Michigan, and California. Although Hunter was not present at the resentencing hearing, a postal inspector testified as to statements made by Hunter during an interview in August 1995.[1] These statements were consistent with Hunter's trial testimony, and reflect that Hunter knew (or at least had strong reasons to suspect) that Austin Galleries sold unauthentic works, yet Hunter continued to work for Austin and sell the counterfeits.

For example, Hunter realized that Austin could somehow obtain any number of pieces that a customer wished, Tr. 820–21; starting in 1985, Hunter saw "dot formation"—telltale signs of photomechanical reproduction—on works sold as lithographs, Tr. 824–26; Hunter received weak documentation purporting to be certificates of authentication from Austin Galleries headquarters' in Illinois, Tr. 824–25; Hunter saw works with duplicate numbers from the same limited edition, Tr. 831, including works shipped from Illinois, Tr. 835, and Hunter testified that at least

---

1. The Confrontation Clause does not apply at sentencing, and hearsay is admissible at sentencing so long as the defendant has a reasonable opportunity to rebut the hearsay and is otherwise reliable. *See United States v. Francis*, 39 F.3d 803, 810 (7th Cir.1994). Because Hunter's statements were against his penal interest, and were consistent with his trial testimony (which Austin had an opportunity to cross-examine), we overrule the defendant's objections to the hearsay statements presented by the postal inspector.

once he still offered one of the works for sale, Tr. 836; based on advice from another gallery owner, Hunter removed works for sale because they were unauthentic, yet later offered the works for sale after Austin ordered him to do so, Tr. 846; and Hunter knew that Hawaii state officials had begun investigating a gallery that received works from some of the same suppliers from whom Austin bought works, Tr. 845. Similarly to Galitz, Hunter too was concerned about losing his job, and thus "back[ed] off" from confronting Austin. Tr. 861–62. In light of the trial and resentencing testimony, the government proved by a preponderance that Hunter knowingly participated in Austin's scheme, or at the least consciously avoided guilty knowledge.

Not only did the criminal activity organized or led by Austin involve at least two participants, the criminal activity involved many outsiders and was extensive under § 3B1.1(a). At resentencing, Galitz testified that Austin employed approximately one hundred persons, and all but a dozen or so of the hundred worked in sales. In addition, Austin owned many galleries in states throughout the country, and the fraudulent scheme spanned several years. Accordingly, we find that the defendant organized or led criminal activity that was "otherwise extensive" and will apply the four level increase under § 3B1.1(a).

## II. Defendant's Motions

■ In addition to the § 3B1.1 issue, we also considered two motions at the defendant's resentencing hearing. First, we deny Austin's motion for a new trial based on newly discovered evidence.[2] In order to prevail on such a motion,

[t]he defendant must demonstrate that the evidence (1) came to [his] knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would

probably lead to an acquittal in the event of a retrial.

*United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992) (quoting *Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987)). Austin argues that two government expert witnesses, who testified as to the definition of the terms "original," "after," and unauthorized reproduction in the art industry, and who testified as to the authenticity of Salvador Dali works produced after 1979, provided inconsistent testimony in the 1990 federal prosecution of a Hawaii art gallery. However, the testimony provided by the two experts in Austin's trial is not so contradicted by their testimony in the 1990 prosecution such that acquittal would be likely in a retrial. Indeed, most of the purported inconsistencies relate to the distinction between "originals" and "afters," while there exists plentiful evidence that Austin sold completely unauthorized reproductions, including photomechanical copies. Finally, the 1990 testimony was available to the defendant for almost three years before his own trial, and thus due diligence would have led to its discovery.[3]

■ Similarly, the testimony of Philip Coffaro in a subsequent federal prosecution in New York was not so inconsistent with his testimony in Austin's trial such that retrial would likely result in acquittal. Furthermore, abundant evidence established that Austin either knew or consciously avoided the knowledge that Coffaro-supplied works were unauthentic, regardless of what Coffaro told Austin. Accordingly, we deny the defendant's motion for a new trial.

■ Finally, we deny the defendant's motion for a new sentencing hearing in order to redetermine the amount of loss upon which Austin's offense level is based. Our previous loss determination was affirmed by the Seventh Circuit, and thus represents law of the case. *See Austin,* 54 F.3d at 402–03; *United*

---

2. It appears that the defendant's motion for a new trial on the basis of newly discovered evidence is indeed timely filed, Fed.R.Crim.P. 33, and we thus resolve it on the merits.

3. To hold that the defendant could have discovered the testimony with due diligence is not to prejudge that Austin's attorney performed incom-

petently or that the performance was prejudicial, *cf. Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); the theory of the defense, for example, may have rendered the 1990 testimony unhelpful.

*States v. Polland,* 56 F.3d 776, 779 n. 1 (7th Cir.1995). Additionally, the court of appeals issued a limited remand for resentencing, and that limited mandate precludes us from reopening any other aspect of sentencing. *See Austin,* 54 F.3d at 405; *United States v. Goudy,* 78 F.3d 309, 315–16 (7th Cir.1996). Thus, no authority exists to reopen sentencing on the loss determination based simply on purportedly new evidence at this time; only a properly supported § 2255 motion may provide such authority. Accordingly, we deny for lack of jurisdiction the motion for a new sentencing hearing.

### III. Conclusion

For the reasons set forth above, we apply the § 3B1.1(a) enhancement, and deny the defendant's motions for a new trial and for a new sentencing hearing.[4]

Resentencing is set for May 31, 1996, at 2 p.m. It is so ordered.

---

**4.** We also deny the defendant's recently submitted motion to supplement his new trial and new sentencing hearing motions; the supplemental arguments would not affect our decision, and are more akin to arguments in support of a § 2255 motion.