**UNITED STATES of America, Appellee,**

v.

**Jeffrey L. WEST, Appellant.**

**No. 90–1341.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1990.

Decided Aug. 21, 1991.

Rehearing and Rehearing En Banc Denied Sept. 30, 1991.

John Kilo, St. Louis, Mo., for appellant.

John E. Hall, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jeffrey L. West appeals from the sentence imposed upon him after his guilty plea to one count of selling adulterated

meat food products with intent to defraud in violation of 21 U.S.C. §§ 601(m)(8), 610(b)[1] and 676. He claims that the district judge sentenced him in the erroneous belief that he had no discretion to depart from the sentencing guidelines. He also argues that the district court erred in four respects in applying the guidelines: by enhancing his sentence for supervising a criminal activity that involved five or more participants or was otherwise extensive under U.S.S.G. § 3B1.1(b) and for engaging in a crime involving more than minimal planning, U.S.S.G. § 2F1.1(b)(2); by failing to reduce his offense level by designating him as a "minor participant," U.S.S.G. § 3B1.2; and in assessing the loss to the victim. U.S.S.G. § 2F1.1(b)(1). Finally, he appeals the propriety of the restitution order. We remand to the district court for further proceedings regarding the restitution order, but we affirm the sentence in all other respects.

Jeffrey L. West, his father, Joseph West, and West Meat Co. were charged with selling adulterated meat products with intent to defraud. The State of Missouri was the purchaser of the adulterated meat. Jeffrey L. West pleaded guilty and, after a hearing, was sentenced to a term of 21 months imprisonment and ordered to pay $95,062.72 in restitution.

## I.

West attacks the district court's application of the Sentencing Guidelines in a number of respects.

▮ The most troublesome issue West raises regards the application of U.S.S.G. § 3B1.1(b), increasing the offense level due to West's "aggravating role" as supervisor of a criminal activity that "involved five or more participants or was otherwise extensive." The district court concluded that West's offense level should be increased under section 3B1.1(b) because there were at least eight employees who "knowingly

or unknowingly participated in the instant offense, of which this defendant was an organizer and leader...." *United States v. West*, No. 89–157CR(3), slip op. at 5 (E.D.Mo. Dec. 29, 1989).

West argues that the other employees were not "participants" within the meaning of the guideline because they had no criminal responsibility for their acts and that therefore his offense level cannot be enhanced under U.S.S.G. § 3B1.1(b). This argument goes to construction of the guidelines, and we review the question *de novo*. *See United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990).

While it is quite true that the word "participants" refers to persons criminally responsible for their acts, U.S.S.G. § 3B1.1, comment. (n. 1), under the guidelines an "aggravating role" can also be premised on the defendant's supervision of "otherwise extensive" criminal activity. U.S.S.G. § 3B1.1(b). The district court's order indicates that the court relied on this "otherwise extensive" language in applying section 3B1.1 to West: "Where criminal activity is otherwise extensive, it is provided all persons involved ... are to be considered. The Court does so consider them...." Slip op. at 5.

Section 3B1.1 has been read by other circuits to require the existence of more than one criminally responsible "participant," on the strength of the "Introductory Commentary," which notes that "[w]hen an offense is committed by more than one participant § 3B1.1 ... may apply." *See United States v. Anderson*, 942 F.2d 606 (9th Cir.1991) (en banc); *United States v. Bierley*, 922 F.2d 1061, 1066 (3d Cir.1990); *United States v. Carroll*, 893 F.2d 1502, 1509 (6th Cir.1990). However, in this case we need not decide whether we would follow this gloss. Because Joseph West and Jeffrey West both pleaded guilty to participation in the same fraud, section 3B1.1 would cover West's case whether or not we

---

**1.** There is some confusion concerning one of the statutes under which West was charged. It appears in the indictment as 21 U.S.C. "§ 610(b)" and in the judgment as 21 U.S.C. § "601(b)"; however, this matter was disposed of as a guilty plea and West raises no question in this regard.

interpret the guideline to require more than one participant.[2]

Once over this threshold hurdle, we are entirely satisfied that the record supports the finding that the criminal activity was "otherwise extensive." The "otherwise extensive" language refers "to the number of persons involved in the operation," *United States v. Boula,* 932 F.2d 651, 654 (7th Cir.1991), and includes "all persons involved during the course of the entire offense," U.S.S.G. § 3B1.1, comment. (n. 2), including "outsiders" who did not have knowledge of the facts. *Id.* In this case, West does not dispute either that he was a supervisor or that at least eight employees participated in the adulteration, though some may have participated without knowledge of the facts making their activities part of a crime. The district court did not err in considering these employees in determining that the criminal activities in this case were "otherwise extensive."

■ West also argues he was entitled to a two point reduction in offense level because he was a "minor participant" under the "Mitigating Role" provision, U.S.S.G. § 3B1.2(b). A "minor participant" is defined as one "who is less culpable than most other participants, but whose role could not be described as minimal," U.S.S.G. § 3B1.2, comment. (n. 3). The "Mitigating Role" section as a whole is described as permitting adjustment for a defendant who plays a part in committing the offense that makes him "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd).

West argues that since he was less culpable than Joseph West, he is entitled to the minor participant reduction as a matter of law. Under the guidelines, the mere fact that the defendant was less culpable than his co-defendant does not entitle the defendant to "minor participant" status as a matter of law. In *United States v. Rex-*

*ford,* 903 F.2d 1280 (9th Cir.1990), the defendant was concededly less culpable than his codefendant, but was still held to have been more than a "minor participant" because he was "deeply involved" in the offense. *Id.* at 1282–83. In our case, the stipulated facts indicate Jeffrey West was deeply involved in the criminal acts. The district court did not err in denying Jeffrey West a "mitigating role" reduction simply because his father was more culpable.

■ West argues that the court erred in adding two offense levels because the fraud involved more than minimal planning. U.S.S.G. § 2F1.1(b)(2). West argues that he did not participate in ordering the unauthorized ingredients, formulating the products, or contracting with the State of Missouri. West's arguments are directed to the nature of his role in the offense, rather than the nature of the offense itself, which is the focus of the "more than minimal planning" language. U.S.S.G. § 2F1.1(b)(2). Almost any crime that consists of a pattern of activity over a long period of time would qualify as an offense involving more than minimal planning: " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, comment. (n.1(f)). West stipulated that he knowingly participated in a fraud "[b]eginning in late 1987 and continuing through October 26, 1989." Since it is not disputed that the offense itself required more than minimal planning and that Jeffrey West was involved for almost two years, the district court's application of section 2F1.1(b)(2) was not clearly erroneous.

■ West also argues that the district court erred in determining that the loss to the victim was $285,188.16, thereby requiring an increase of seven offense levels under U.S.S.G. § 2F1.1(b)(1).[3] The State of

---

**2.** One court has also stated in dictum that in order to enhance the offense level under section 3B1.1(b), the offender must "organize[ ] or lead[ ] criminally responsible individuals." *De-Cicco,* 899 F.2d at 1535. We do not perceive a basis in the guidelines for such a requirement.

**3.** The presentence investigation report characterizes the loss to the victim as "between $200,-001.00 and $500,000.00." and applies U.S.S.G. 2F1.1(b)(1)(H) to add seven levels. This appears to be a mistake, since that amount of loss would correspond to an *eight* level increase un-

Missouri contracted for approximately 334,-000 pounds of meat, at a price of about $285,000. West argues that some 62,000 pounds of meat were recalled by West Meat Co. and credit issued to the State, and the State withheld payment on an additional 58,000 pounds. In addition, the Wests paid $20,000 in settlement of a civil suit against them by the State of Missouri. Moreover, West argues that since the products sold included mostly good meat and only a small percentage of adulterants, the value attributable to the good meat should not be considered part of the State's loss.

The amount of the loss is a factual question to be reviewed under the clearly erroneous standard. *See Morphew v. United States*, 909 F.2d 1143, 1145 & n. 5 (8th Cir.1990). The record in this case consisted of the presentence report and the objections West made to the report by motion and at a hearing. The district court made a factual determination based on the materials presented to it.

The guidelines establish that loss includes "probable or intended loss," U.S.S.G. § 2F1.1, comment. (n. 7). Therefore, West's arguments about recalled unused product, withheld funds and settlement credit cannot lower the relevant amount under U.S.S.G. § 2F1.1(b).

West's argument that he should be given credit for the proportion of the product that was actually meat has no merit where, as here, the good was mixed with the bad in the form of sausage and ground meat.

### III.

■ West argues that the district court evidenced a mistaken belief that it was required to impose a sentence within the guidelines and was without authority to depart. Specifically, West points to the following two statements by the court:

> [T]he court does not find itself with a free hand to roam about in the imposition of punishment, but must stay within the guidelines. And it does so in this case.

Dec. 29, 1989 Tr. at 25.

> [T]he court has no problem with an imposition of jail time. The Court thinks that

it's a little heavy, but the Court is following the sentencing guidelines and feels it has no discretion to legitimately exercise beyond that point.

*Id.* at 34.

We do not read these statements as similar to those in *United States v. Brown*, 903 F.2d 540, 544–45 (8th Cir.1990), where the court stated that it had no legal authority to depart. Here, the district judge's statements at the hearing taken as a whole show that he understood that there were occasions in which the facts would warrant a departure, but that this case was not one of them. We see no error in the district judge's comments, taken in context.

### IV.

West's final argument is that the district court erred in ordering him to pay restitution on the basis of one-third of the sum of $285,188.16. He argues that the district court failed to take into account his financial status and the amounts by which the State of Missouri has already been compensated.

■ We first observe that there is some question concerning the applicable criteria for fixing the amount of the restitution order. The government argues that West's arguments are based on 18 U.S.C. §§ 3663–64 (1988 and West Supp.1991), but that section 3663(a) makes those sections inapplicable to convictions under Title 21, such as West's. However, we believe that West correctly identified the appropriate criteria. The court ordered restitution as a condition of supervised release under 18 U.S.C. § 3583 (1988) and U.S.S.G. § 5E1.1(a). Section 3583(d) permits the court to order restitution as provided by § 3563(b)(3), which in turn incorporates sections 3663–64, but *without the limitations of section 3663(a)*. Therefore, West's arguments based on sections 3663–64 are well-taken.

■ Under section 3664 the court setting a restitution order shall "consider the amount of the loss sustained by any victim

der section 2F1.1(b)(1)(I). Understandably,      West does not complain of this mistake. .

as a result of the offense, the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents...." Our study of the record convinces us that while there was information in the PSI with respect to the financial resources of the defendant, his financial needs and earning ability, and his dependents, the district court did not give proper consideration to these factors, nor articulate any findings as to them. The presentence report showed that Jeffrey West had a net worth of minus $2,727.28, income of $1200 per month, and total expenditures of $974.48 per month. He has the responsibility for the support of a wife and two-year-old child. The restitution was to be paid in the first year of supervised release. Given the discrepancy between West's ability to pay and the amount of the restitution order, we conclude that the district court did not properly take into account West's financial condition in setting the restitution amount. *See United States v. Mahoney*, 859 F.2d 47, 52 (7th Cir.1988).

■ We also observe that 18 U.S.C. § 3663(e)(1) provides that restitution shall not be imposed with respect to a loss for which the victim has received or is to receive compensation. In this case the State of Missouri agreed to what it termed a "fair and adequate settlement" of the claims against West, his father and the corporation for a total sum of $20,000. In addition, the State had withheld payment for some of the meat and had returned other meat for credit. These credits should have been taken into account in fixing the amount of restitution.

We affirm the sentence of imprisonment. We remand to the district court for further proceedings on the issue of restitution, considering the settlement already paid to the State of Missouri, the other credits West may be entitled to, as well as West's financial resources.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion in all respects but one: I do not believe that the involvement of eight West Meat Company employees was sufficient to make West's criminal activity "otherwise extensive" within the meaning of guideline section 3B1.1.

Aggravating role enhancements increase a defendant's offense level "based upon the size of a criminal organization." U.S.S.G. § 3B1.1 commentary, background. Section 3B1.1 provides that an aggravating role enhancement is appropriate if the defendant was an organizer, leader, manager, or supervisor of a criminal activity that "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a), (b).

The word "participants" is a term of art here. The commentary defines "participant" as "a person who is criminally responsible for the commission of the offense." *Id.*, commentary, application note 1. Thus, if a criminal activity involved five or more persons who were criminally responsible, its organizer, leader, manager, or supervisor should receive an aggravating role enhancement.

The use of the words "*or* was *otherwise* extensive" following the phrase "five or more participants" indicates that the guidelines' drafters considered five or more criminally responsible individuals to constitute an "extensive" criminal organization. It also indicates that some greater number of individuals not rising to the level of "participants" is required to constitute an "otherwise extensive" organization. If an "otherwise extensive" organization did not require a number of actors greater than the number of "participants" required for an "extensive" organization, the drafters would have seen no need to distinguish between an organization with five or more participants and one that was otherwise extensive by virtue of the involvement of other, possibly unwitting, individuals. If the involvement of any five individuals, irrespective of their criminal responsibility, were sufficient to constitute an otherwise extensive organization, the preceding clause requiring five or more participants would be rendered a nullity.

Section 3B1.1 and its commentary thus make clear that more than five non-"participants" are needed to make an organization "otherwise extensive." The commentary gives little guidance, however, as to how many more than five are required. Application note 2 gives this example: "a fraud that involved only three participants but used the unknowing services of *many* outsiders could be considered extensive." *Id.*, commentary, application note 2 (emphasis added).

The majority finds that the involvement of at least eight West Meat Company employees in the offense renders West's criminal organization "otherwise extensive." Both West and his father are included in the total of eight, however, and each of them fits the definition of "participant." The majority thus concludes that the involvement of six additional West employees was sufficient to constitute an "otherwise extensive" organization. Implicit in this conclusion is a finding that the number of non-"participant" actors required for an "otherwise extensive" organization exceeds the number of "participants" required for an "extensive" organization by only a single individual. This interpretation renders meaningless the distinction drawn in the guideline between an organization with five or more participants and one that is otherwise extensive.

Even if I could agree with the majority's interpretation of "otherwise extensive," I would remand this case for resentencing on another ground. It is by no means clear from the sentencing transcript that the district court based West's aggravating role enhancement on the involvement of a sufficient number of West employees to constitute an "otherwise extensive" organization. The presentence investigation report (PSI) recommended a three-level adjustment because West "was a manager or supervisor of a criminal activity that included five or more participants."

In addressing West's objection to this recommendation, the court stated:

> The Court finds these objections are not well taken. There were indeed more than five participants, directed and employed by defendant, and it is not necessary that they be convicted to be a participant, criminally responsible for commission of an offense. As to the numbers, at least eight former employees of Defendant West Meat Company knowingly or unknowingly participated in the instant offense of which this defendant was an organizer and leader, and the participant may be criminally responsible for the commission of an offense, though not convicted. Where criminal activities [are] otherwise extensive, it is provided that all persons involved during the course of the entire offense, both knowing and unknowing, are to be considered. The Court does so consider them, and these objections to paragraph 20 of this objection will be overruled.

Sentencing Transcript at 12–13. The district court thus found that the organization involved not only five participants, but also at least eight knowing or unknowing former employees.

The district court's remarks reflect some confusion as to the distinction between a participant and an unknowing actor. Discerning which clause of section 3B1.1 the court based West's sentence enhancement on is not so simple as the majority suggests. The PSI premised its recommendation on the existence of five or more participants, and West objected to this recommendation. The district court should have made a clear and precise finding as to the number of actors involved and their level of criminal responsibility before enhancing West's sentence under section 3B1.1. The above-quoted ruling lacks such a finding. Accordingly, I would vacate West's sentence and remand this case to the district court for a clarification of the reason for the imposition of the aggravating role enhancement prior to resentencing.