UNITED STATES of America, Appellee,

v.

Donald Lee EARLES, Appellant.

No. 91–1345.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1991.

Decided Feb. 3, 1992.

Robert Sikma, Sioux City, Iowa, argued, for appellant.

Michael M. Hobart, Sioux City, Iowa, for appellee.

Before LAY *, Chief Judge, ARNOLD **, Circuit Judge, and STUART ***, Senior District Judge.

STUART, Senior District Judge.

Defendant Donald Lee Earles appeals his conviction and sentence for mail fraud and related offenses. The issues he raises on appeal address the sufficiency of the evidence, government complicity, newly discovered evidence, mistrial based on improper statements from a witness, the application of the sentencing guidelines, and the propriety of his incarceration in a medium security facility. After reviewing the record, the judgment of the district court [1], and the briefs and arguments of counsel, we affirm.

---

* The Hon. Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The Hon. Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

*** The Hon. W.C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. Donald E. O'Brien, Chief United States District Judge for the Northern District of Iowa.

## I.

The five-count indictment against the defendant charged him with (I) mail fraud, (II) conspiracy to commit mail fraud, (III) interstate transportation of stolen property, (IV) interstate transportation of a fraudulently obtained cashier's check, and (V) wire fraud. Count III was severed prior to trial. Defendant stood trial by jury along with two co-defendants: his girlfriend, Catherine Papajohn and his son, Donald Scott Earles.

Defendant's son was granted a mistrial after one of the witnesses, Raymond Amsden, mentioned his cocaine addiction. Defendant's girlfriend was acquitted of all charges. Defendant, however, was convicted on all counts except, of course, Count III, which the government voluntarily dismissed after trial. The district court sentenced defendant to eighteen months of imprisonment and three years of supervised release, with a special assessment $200. The district court denied subsequent motions for a new trial.

## II.

"In reviewing a jury conviction, we must consider the evidence in the light most favorable to the government and must uphold the verdict if a reasonable fact finder could have found guilt beyond a reasonable doubt." *United States v. Admon,* 940 F.2d 1121, 1123 (8th Cir.1991).

### a.

Defendant was charged in Count I of the indictment with the crime of mail fraud. *See* 18 U.S.C. §§ 2 and 1341 (1988). In *United States v. Leyden,* 842 F.2d 1026, 1028 (8th Cir.1988), the court held:

> To establish mail fraud, the United States need demonstrate only that: (1) there was a plan or scheme to defraud; (2) it was foreseeable that the defendant's scheme would cause the mails to be used; and (3) the use of the mails was "for the purpose" of carrying out the fraudulent scheme. (Footnote omitted.)

One who knowingly participates in an ongoing mail fraud devised by another is guilty of mail fraud. *See United States v. Sedovic,* 679 F.2d 1233, 1238–39 (8th Cir. 1982).

The government presented evidence at trial that a United States Postal Inspector, Michael Jones, investigated complaints about advertisements in several farm publications sent through the mails. The advertisements offered antifreeze, propane tanks, baling wire and twine for sale. The victims would call the number listed in the advertisement and would be asked to remit a downpayment for the products ordered, with the balance due upon delivery. Most of the downpayments were received through the mails. The victims never received any products.

Jones testified that his investigation led him to an office in the Cade Building in Sloan, Iowa. Defendant and Papajohn owned the building under the name of Cade Incorporated. The office had two telephones. At the office, Jones met Papajohn, Amsden, and the defendant, and asked them about two companies implicated in the fraud, U.S. Liquidation and Amsden Equipment Company. Jones also asked about another company, Midwest Tank, which had a Denver, Colorado, address and telephone number established through a Denver office service company. The service was established in the name of Don Malloy.

Amsden cooperated with the investigation. He testified at trial that in February 1989 defendant had asked "what kind of scam can we get going now," knowing that Amsden had defrauded other people out of money prior to that time. Amsden testified that defendant provided the office and telephones for the fraudulent scheme, flew or drove Amsden to meetings with victims, answered telephone calls from victims, gave false credit or personal references for Amsden, established the Denver office using the name of Don Malloy, placed an advertisement in a Denver newspaper for the sale of propane tanks, and received a proportionate share of the proceeds.

Through the testimony of Amsden and one of the victims, Henry Rieken, the government presented evidence that defen-

dant ordered baling wire and twine from Rieken using a false name (Mr. McDonald) so that Rieken would order more baling wire and twine from Amsden. Rieken sent checks to Amsden through the mails on three occasions. The government also presented evidence that defendant drove Amsden to Rieken's farm in Tecumseh, Nebraska, to pick up a $10,000 check for non-existent propane tanks, knowing that Rieken was being defrauded. Rieken also visited with the defendant briefly the one time that he came to the Sloan, Iowa, office.

Through the testimony of Amsden and another victim, Tom Cadenhead, the government presented evidence that defendant drove Amsden to Kansas City, Missouri, to meet Cadenhead. Defendant told Cadenhead that he was Amsden's financier and he participated in the discussions leading up to a sale of non-existent propane tanks. Defendant also signed the sales contract between Amsden and Cadenhead. Defendant admitted being present and signing the contract.

A third victim, Max Winfield, testified that he met with Amsden, Donald Scott Earles and defendant in Council Bluffs, Iowa, to buy bailing wire and twine. Amsden testified that defendant knew that no baling wire or twine existed, knew the purpose of the meeting with Winfield, and received a share of the proceeds. The government presented evidence that defendant went to Denver a second time to pick up a $1,050 check from Poudre Valley Coop Association of Fort Collins, Colorado, for non-existent propane tanks. Physical evidence substantiated witness testimony in certain particulars.

The government presented at trial evidence sufficient for a reasonable jury to conclude that the defendant participated—with knowledge—in a mail fraud scheme. Although Amsden's credibility was attacked at trial, this court cannot conclude that his credibility was so undermined that the evidence supporting the conviction is insufficient as a matter of law. The court instructed the jury as to credibility determinations generally and as to Amsden particularly. See, e.g., *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, §§ 3.04 (credibility of witnesses), 2.18 (impeachment of witness once convicted of a crime), 4.04 (testimony under plea bargain), 4.05 (testimony of accomplice) (1989). Defendant's conviction for mail fraud must be affirmed.

b.

■ Defendant was charged in Count II of the indictment with the crime of conspiracy to commit mail fraud. See 18 U.S.C. § 371. In *United States v. Hoelscher*, 764 F.2d 491, 494 (8th Cir.1985), the court held: "The offense of conspiracy consists of an agreement between [two or more persons] to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy." The government presented at trial evidence sufficient for a reasonable jury to conclude that defendant voluntarily and intentionally joined and participated in a conspiracy to commit mail fraud, knowing the purpose of the conspiracy.

c.

■ Defendant was charged in Count IV of the indictment with the crime of interstate transportation of fraudulently obtained property. See 18 U.S.C. § 2314. In *United States v. Miller*, 725 F.2d 462, 468 (8th Cir.1984), the court held: "The statutory language of [§ 2314] requires knowledge on the part of the defendant that the property was taken by fraud." Through the testimony of Amsden and Cadenhead, the government presented evidence that when defendant and Amsden returned to Iowa from their meeting with Cadenhead in Kansas City, they took with them a $37,500 cashier's check for non-existent propane tanks. The jury reasonably could conclude from the other evidence presented at trial that defendant did so knowing that the property was taken by fraud.

d.

■ Defendant was charged in Count V of the indictment with the crime of wire fraud. See 18 U.S.C. §§ 2 & 1343. In

*United States v. Bryant,* 766 F.2d 370, 375 (8th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), the court held:

> Certainly the statute requires that defendant be a party to some kind of scheme to defraud.... It also requires that the defendant intend that a communication by wire be sent in furtherance of the scheme, or at least that the use of wire communication be reasonably foreseeable [and] that the wire communication *be* interstate....

The government presented at trial evidence sufficient for a jury to conclude that defendant committed the crime of wire fraud. The defendant placed and received several interstate telephone calls in furtherance of the same scheme to defraud that formed the basis for his mail fraud conviction. *See, e.g., United States v. Tackett,* 646 F.2d 1240, 1243 (8th Cir.1981) (telephone calls "designed to lull victims into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect" are wire communications made in furtherance of the fraudulent scheme).

### III.

■ Defendant raised the issue of government complicity in the offense in his motion for new trial. The district court found that Amsden had worked for the Federal Bureau of Investigation (FBI) over a period of years and had been paid as much as $65,000 for covert work he had done for the FBI. However, the court found that there was no indication that the FBI or the Department of Justice were aware of Amsden's involvement in the mail and wire fraud scheme until shortly before the defendants were arrested. The court concluded that there was no government complicity in Amsden's mail and wire fraud activities.

We review the district court's findings on the government misconduct issue under the "clearly erroneous" standard. *See, e.g., United States v. Picone,* 773 F.2d 224, 226 (8th Cir.1985) (per curiam). The district court's findings in this case are supported by substantial evidence in the record. We

therefore affirm the district court's denial of defendant's motion for new trial based on government misconduct.

### IV.

■ To justify a new trial based on newly discovered evidence, the evidence must be of such a nature that it would probably produce an acquittal at a new trial. *United States v. Begnaud,* 848 F.2d 111, 113 (8th Cir.1988); *United States v. Bednar,* 776 F.2d 236, 238 (8th Cir.1985); *United States v. Widgery,* 674 F.2d 710, 712 (8th Cir.), *cert. denied,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). The district court concluded that the new evidence offered by defendant failed to satisfy this standard. We agree.

Defendant's new evidence consists of the testimony of Kimberly Hindley, who was hired by Amsden to answer the telephone. The record supports a finding that Hindley started working for Amsden at the very end of the conspiracy alleged in the indictment. The evidence presented at trial showed that, by the time Hindley started working for Amsden, defendant already had engaged in most of the activities which formed the basis for his indictment. Hindley's testimony consists largely of impeachment evidence against Amsden, with whom she was having an affair. We conclude that the district court did not abuse its discretion in denying the motion for new trial based on newly discovered evidence.

### V.

■ "[T]he decision whether to grant a mistrial, which is a very drastic remedy, lies within the sound discretion of the district court." *United States v. Elem,* 845 F.2d 170, 172 (8th Cir.1988). As we noted in *Elem,* generally an admission of prejudicial statements made during the trial can be cured by striking them and instructing the jury to disregard them. *Id.* In this case, one of the witnesses (Amsden) mentioned Donald Scott Earles' cocaine addiction. The district court granted Donald Scott Earles' motion for mistrial, denied defendant's motion for mistrial based on the statement relating to his son's addic-

tion, struck the testimony and instructed the jury to disregard it. We believe the district court cured any prejudice which may have resulted from the statement. We conclude that the district court did not abuse its discretion in denying defendant's motion for mistrial.

## VI.

Defendant challenges the district court's application of the Sentencing Guidelines. The district court determined that defendant's base offense level was six for an offense involving fraud and deceit. *See* U.S.S.G. § 2F1.1(a) (1991). The court added six points for victim losses between $100,000 and $200,000. *See* U.S.S.G. § 2F1.1(b)(1)(G) (add 6 for loss between $70,001 and $120,000). The court then added two points for an offense involving more than minimal planning. *See* U.S.S.G. § 2F1.1(b)(2). The court denied both the defendant's application for a two-point reduction for acceptance of responsibility and the government's application for a two-point enhancement for obstruction of justice. *See* U.S.S.G. §§ 3E1.1 (acceptance of responsibility) & 3C1.1 (obstruction of justice). Defendant's adjusted offense level of fourteen and category I criminal history yielded a sentencing range of fifteen to twenty-one months. The court sentenced defendant to eighteen months imprisonment.

■ First, the defendant challenges the addition of six points for victim losses between $100,000 and $200,000. "The amount of the loss is a factual question to be reviewed under the clearly erroneous standard." *United States v. West,* 942 F.2d 528, 532 (8th Cir.1991). "[I]n calculating the extent of defendant's involvement, for sentencing purposes, the Court is not confined to the amount of money personally taken in and handled by [the defendant]." *Morphew v. United States,* 909 F.2d 1143, 1145 (8th Cir.1990). Therefore, defendant's argument that only one $5,000 check endorsed by him may be used to establish victim loss is meritless. The government presented evidence that the conspiracy in which the defendant partici-

pated defrauded victims of over $100,000. Furthermore, the district court properly included the amount taken from Cadenhead but which did not eventually result in actual loss (Cadenhead was able to stop payment on this check). *See* U.S.S.G. § 2F1.1, comment (n. 7); *West,* 942 F.2d at 532; *United States v. Johnson,* 908 F.2d 396, 398 (8th Cir.1990). The district court's finding of victim losses is not clearly erroneous.

■ Next, the defendant challenges the addition of two points for an offense involving more than minimal planning. He argues that "there was no evidence that [defendant] did anything other than take instructions from Ray Amsden." As in the *West* case, the defendant's arguments "are directed to the nature of his role in the offense, rather than the nature of the offense itself, which is the focus of the 'more than minimal planning' language." 942 F.2d at 531. The government presented evidence that the fraudulent pattern of activity extended over a period of at least eight months and involved a significant amount of planning. Therefore, the district court's addition of two points for more than minimal planning was not clearly erroneous. *See* U.S.S.G. § 1B1.1, comment (n. 1(f)); *West,* 942 F.2d at 531.

Finally, the defendant challenges the denial of a two-point reduction for acceptance of responsibility. "Whether a defendant has accepted responsibility is a factual question which depends largely on credibility assessments by the sentencing court." *United States v. Youmans,* 926 F.2d 747, 749 (8th Cir.1991) (per curiam). Upon reviewing the record, we find it supports the district court's denial of a reduction for acceptance of responsibility.

## VII.

The defendant challenges his incarceration in a medium security facility. Defendant was designated for incarceration in a camp (minimum security) facility. He was directed to report to the camp facility at Leavenworth, Kansas. He claims that, since he reported, the camp facility has

been redesignated as a medium security and that his continued incarceration there violates his rights to due process and equal protection of the law.

The issue was neither raised nor addressed in the court below and is not properly before this court.

The judgment of the district court is affirmed.