996 F.2d 1222
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of America, Appellee,
v.
Keith Lamonte HILL, Appellant.
 No. 92-3933.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 15, 1993.
Filed: July 8, 1993.
 
 Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Keith Lamonte Hill appeals the sentence of two years and six months imposed by the district court[1] following his guilty plea to conspiring to use one or more unauthorized access devices in violation of 18 U.S.C. §§ 371, 1029. We affirm.
 
 
 2
 Pursuant to a plea agreement, Hill pleaded guilty to conspiring with Steven Keim, Heather Christensen, and others to traffic in or use unauthorized access devices to obtain property worth more than $1000 between November 1, 1989, and June 1, 1992. The government began its investigation after the Omaha police arrested Keim on January 3, 1990, for credit card fraud. Keim told the police that he met Hill while they were both incarcerated in the Sarpy County Correctional Facility. Keim stated that Hill would place orders at various stores in the area, using unauthorized credit card numbers which he had fraudulently obtained, and would then instruct Keim where to pick up the merchandise.
 
 
 3
 On February 22, 1991, Hill was indicted in the District of Nebraska for the conspiracy involving Keim. Hill was transferred from federal prison back to the Sarpy County jail to await trial. In March 1992, the United States Secret Service learned that Hill was engaging in credit card fraud activity from the jail. An investigation revealed that Hill had been contacting local merchants and identifying himself as a loss prevention officer for various credit card companies to obtain cardholder information and card numbers. He would then order gifts or merchandise and arrange for these items to be picked up by or delivered to his coconspirators. Hill also obtained telecommunication card numbers in the same manner and used them to place calls for himself and other inmates. Government agents apprehended one of Hill's coconspirators attempting to pick up merchandise at an area mall, and she agreed to allow them to tape record conversations she later had with Hill. These conversations further confirmed Hill's involvement in the scam. A subsequent search of the jail uncovered telephone numbers to U.S. Sprint and MCI and unauthorized credit card numbers in several cells.
 
 
 4
 On appeal, Hill argues the district court erred in (1) finding that the amount of the loss attributable to him exceed $10,000; (2) finding that there was one conspiracy and holding him responsible for acts of his alleged coconspirators of which he was unaware and which he could not have foreseen; and (3) finding that he was the leader of "extensive" criminal activity.
 
 
 5
 We review the district court's factual findings as to the amount of the loss attributable to Hill's fraudulent activities under the clearly-erroneous standard. United States v. Nelson, 988 F.2d 798, 808 (8th Cir. 1993). Section 2F1.1, comment. (n.8) of the Sentencing Guidelines provides that the "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." Moreover, for sentencing purposes, Hill is responsible for the entire amount of the loss caused by the conspiracy. United States v. Earles, 955 F.2d 1175, 1180 (8th Cir. 1992). The district court did not clearly err by rejecting Hill's challenges to the amount of the loss. The testimony at sentencing supports the Court's findings, and we reject Hill's contention that the merchants' reports concerning the losses they incurred were not sufficiently reliable for sentencing purposes. United States v. Burns, 894 F.2d 334, 336-37 (9th Cir. 1990) (per curiam).
 
 
 6
 We also reject Hill's contention that, as a matter of law, the district court erred by calculating the loss by relying on the retail prices of the items he fraudulently obtained rather than their fair market value. As the District Court observed, § 2B1.1, comment. (n.4) provides that the "loss includes any unauthorized charges made with stolen credit cards." The district court correctly relied on this provision because Hill fraudulently obtained access to the credit card numbers and charged merchandise to them just as though he had physically stolen the cards. Moreover, we have previously upheld the use of retail prices for purposes of determining loss. United States v. Russell, 913 F.2d 1288, 1292-93 (8th Cir. 1990), cert. denied sub nom. Moore v. United States, 111 S. Ct. 1687 (1991).
 
 
 7
 Hill did not challenge the district court's findings that there was only one conspiracy and that he was responsible for all the acts of his alleged coconspirators in the court below. We will not consider these arguments because Hill has not shown plain error resulting in a miscarriage of justice. United States v. Ragan, 952 F.2d 1049, 1049 (8th Cir. 1992) (per curiam).
 
 
 8
 Finally, the district court did not err by imposing the § 3B1.1(a) increase on the ground that the criminal activity in which he engaged was "extensive." The record demonstrates that, during the second period of Hill's fraudulent activities from the Sarpy County jail, the conspiracy involved at least six other individuals-Christensen, Kissel, Smith, Harper, Brutetic, and Johnson. This evidence is sufficient to establish "extensive" criminal activity. See, e.g., United States v. West, 942 F.2d 528, 530-31 (8th Cir. 1991).
 
 
 9
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska