7 F.3d 1043
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES OF AMERICA, Appellee,
v.
Timothy Michael MCDONALD, Appellant.
UNITED STATES OF AMERICA. Appellee,
v.
Sachiko Burnham SHINE, Appellant.
 Nos. 93-1916, 93-1917.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: October 4, 1993.
Filed: October 15, 1993.
 
 Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 In these consolidated appeals, Timothy Michael McDonald appeals his sentence of 240 months imposed by the district court[1] after McDonald pleaded guilty to conspiracy to possess with intent to distribute heroin, and Sachiko Burnham Shine appeals her sentence of 30 months imposed by the district court after Shine pleaded guilty to possession with intent to distribute heroin. We affirm.
 
 McDonald
 
 2
 In March 1993, McDonald, pursuant to a plea agreement with the government, pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. McDonald stipulated in the plea agreement that, between May 1991 and March 1992, he conspired with others to possess with intent to distribute and to distribute more than 100 grams of heroin; that in late November 1991 he traveled to California to purchase heroin; that he paid one of the conspirators, Gregory Lee Bauer, nine grams of heroin and approximately $300 as a fee for making contact with the heroin source in California; and that he delivered nine grams of heroin to Wendy Bauer on three other occasions in 1991 as payment to Gregory Bauer for heroin.
 
 
 3
 The presentence report (PSR) indicated a base offense level of 26, and recommended a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 23 and a criminal history category of VI. The Guidelines range was therefore 92 to 115 months, but a statutory mandatory minimum term of 120 months was required pursuant to 21 U.S.C. § 841(b)(1)(B). Both parties filed written objections.
 
 
 4
 The district court determined that the base offense level was subject to a two-level enhancement for obstruction of justice because McDonald fled from law enforcement authorities and remained a fugitive for more than two months after he had been informed by his attorney that he had been indicted, because he had created and perpetuated a false identity to avoid detection, and because he lied to police officers about the location of his wife, a co-conspirator, after he was arrested. The court recognized that U.S.S.G. § 3C1.1 "does not apply to a defendant's instinctual flight in the aftermath of a crime," but found that McDonald "did much more than simply avoid or flee arrest."
 
 
 5
 The court also concluded that "[t]his is not an extraordinary case in which the defendant both obstructed justice and accepted responsibility." As a result, the court denied McDonald the three-level reduction for acceptance of responsibility that the PSR had recommended.
 
 
 6
 Finally, the court found that the PSR incorrectly calculated a base offense level of 26. The court found that McDonald was directly involved in the purchase of 18 ounces (more than 500 grams) of heroin because McDonald made three deliveries of nine grams of heroin to Wendy Bauer. The court also found that the 24 ounces of heroin purchased by McDonald's wife on eight different trips to California were used in furtherance of the conspiracy and were reasonably foreseeable to McDonald. Out of concern that some of the heroin purchased by McDonald's wife had already been charged to the defendant, the court found that McDonald was only responsible for an additional 12 ounces (approximately 360 grams), resulting in a total of 860 grams and a base offense level of 30. With the two-level increase for obstruction of justice, the total offense level was 32. With a criminal history category of VI, the Guidelines range was 210 to 262 months. The court sentenced McDonald to 240 months, to be followed by an eight-year term of supervised release.
 
 
 7
 McDonald now argues that the district court erred by imposing a two-level increase for obstruction of justice, by denying a three-level reduction for acceptance of responsibility, and by computing the base offense level on the basis of co-conspirators' conduct. In connection with his last argument, McDonald also argues that the district court erred in its calculations when it converted ounces to grams.
 
 
 8
 We review de novo a sentencing court's determination that section 3C1.1 applies to specific conduct, but we review for clear error the court's factual findings. See United States v. Lamere, 980 F.2d 506, 510 (8th Cir. 1992). The government bears the burden of proving by a preponderance of the evidence the facts supporting an obstruction of justice enhancement. See United States v. Ransom, 990 F.2d 1011, 1013-14 (8th Cir. 1993). McDonald does not contest the district court's findings that McDonald refused to turn himself in to law enforcement officers and that McDonald remained a fugitive for more than two months after he was informed by his attorney that he had been indicted; therefore, those facts must be accepted as true.
 
 
 9
 Coleen Rozeski testified at sentencing that McDonald and his wife were staying at her apartment prior to their arrest. Timothy Savior, the arresting officer, testified that he saw McDonald leave the apartment building approximately five minutes before he was arrested; that McDonald denied he had seen his wife when asked where she was; and that McDonald's wife was found in Rozeski's apartment a few minutes later. Savior also testified that, when he arrested McDonald, officers found false identication papers in McDonald's possession. We conclude, therefore, that the district court's findings that McDonald knew his wife was in the apartment and that McDonald perpetuated a false identity are not clearly erroneous.
 
 
 10
 While section 3C1.1 is not intended to apply to "avoiding or fleeing from arrest," U.S.S.G. § 3C1.1, comment. (n.4(d)), "[t]he district court has broad discretion to apply section 3C1.1 to a wide range of conduct," and it is apparent that McDonald did more than simply attempt to avoid or flee arrest. See United States v. Lyon, 959 F.2d 701, 707 (8th Cir. 1992). The district court imposed the increase after finding that McDonald had taken these actions in "a deliberate effort to avoid prosecution and attempt to mislead authorities." We conclude, therefore, that the district court did not err by increasing McDonald's base offense level by two for obstruction of justice.
 
 
 11
 We also conclude that the district court did not err by denying McDonald a three-level reduction for acceptance of responsibility. McDonald contends that he is entitled to the reduction because he proved "that he timely accepted responsibility and acknowledged his early willingness to plead guilty." We have previously noted that "[t]he entry of a guilty plea does not entitle a defendant to a sentencing reduction for acceptance of responsibility as a matter of right," and "[c]onduct resulting in an enhancement for obstruction of justice 'ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.' " United States v. Flores, 959 F.2d 83, 87 (8th Cir.) (citing section 3E1.1(c) and quoting section 3E1.1, comment (n.4)), cert. denied, 113 S. Ct. 469 (1992). The district court specifically stated, "This is not an extraordinary case.... Having found that the defendant obstructed justice, the court concludes that a reduction for acceptance of responsibility is not warranted." We defer to the district court's judgment in this instance.
 
 
 12
 Finally, "we review a district court's drug quantity determination for clear error," and a district court will be reversed "only if the entire record leaves us with 'the definite and firm conviction that a mistake has been committed.' " United States v. Simmons, 964 F.2d 763, 773 (8th Cir.) (quoted cases omitted), cert. denied, 113 S. Ct. 632 (1992). The district court found that McDonald was responsible for at least 30 ounces (850.5 grams) of heroin. The district court actually attributed approximately 860 grams of heroin to McDonald, but the error is inconsequential to McDonald's sentence and therefore harmless.
 
 
 13
 After carefully reviewing the record, we conclude that the district court's very conservative drug quantity determination was not clearly erroneous.
 
 
 14
 Accordingly, McDonald's sentence is affirmed.
 
 SHINE
 
 15
 Shine, pursuant to a plea agreement with the government, pleaded guilty to one count of knowingly and intentionally possessing with intent to distribute three ounces of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1). Shine stipulated in the plea agreement that she knowingly possessed more than 25 and less than 80 grams of heroin and that the base offense level was between 18 and 22. The government and Shine also agreed in the plea agreement that she was entitled to a two-level reduction for being a minor participant pursuant to U.S.S.G. § 3B1.2(b), and that she was entitled to a three-level reduction for acceptance of responsibility under section 3E1.1.
 
 
 16
 The PSR indicated a base offense level of 22, and recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of 19 and a criminal history category of I. The Guidelines range was therefore 30 to 37 months.
 
 
 17
 The district court found that Shine returned from her last trip to California with three ounces of heroin in her possession. The court also found "implausible" Shine's contention that she only transported heroin back to Minnesota on one trip. The court also found that the PSR correctly noted that she made five trips to California with Bauer, and that she provided some of the money to purchase the heroin. As a result, the court found that the PSR correctly calculated a base offense level of 22 based on the determination that 60 to 80 grams of heroin was attributable to Shine. The court overruled both the government's and Shine's objections to the PSR's recommendation that she not be granted a two-level reduction as a minor participant. The court found that she was not a minimal participant because she was involved in more than a single transaction, she stored heroin in her house for the McDonalds, Wendy Bauer picked-up "payments" at her house, she facilitated the operation by providing money, and she had knowledge of the scope and structure of the enterprise. The court did, however, grant Shine a three-level reduction for acceptance of responsibility, resulting in a total offense level of 19 with a criminal history category of I. The court sentenced Shine to 30 months, to be followed by a three-year term of supervised release.
 
 
 18
 Shine now argues that the district court's finding that she was responsible for at least 60 grams but less than 80 grams of heroin is clearly erroneous because it was based upon unreliable testimony, and that the court's determination that she was not entitled to a two-level reduction for being a minor participant was also clearly erroneous because, at a minimum, she was substantially less culpable than the average participant in the conspiracy.
 
 
 19
 "We review a district court's drug quantity determination for clear error," and a district court will be reversed "only if the entire record leaves [the court] with 'the definite and firm conviction that a mistake has been committed.' " Simmons, 964 F.2d at 773 (quoted cases omitted). Gregory Bauer testified at sentencing that Shine made between three and six trips with him to California to buy heroin. He also stated that on each trip, Shine received between 50 and 75 grams of heroin. The district court found "implausible" Shine's explaination for the trips. See United States v. Casas, No. 92-2578, slip op. at 9 (8th Cir. July 22, 1993) (credibility determinations are virtually unreviewable). As a result, we conclude that the district court's finding that Shine was responsible for at least 60 grams of heroin was not clearly erroneous.
 
 
 20
 We also review a district court's determination of whether a defendant is entitled to a minor or minimal participant reduction under U.S.S.G. § 3B1.2 for clear error. United States v. Westerman, 973 F.2d 1422, 1428 (8th Cir. 1992). "[T]he mere fact that [Shine may have been] less culpable than [her] co-defendant[s] does not entitle [her] to 'minor participant' status as a matter of law," United States v. West, 942 F.2d 528, 531 (8th Cir. 1991), and she had the burden of proving the applicability of section 3B1.2. United States v. Rayner, No. 92-2629, slip op. at 4 (8th Cir. Aug. 13, 1993). After carefully reviewing the complete record provided in this consolidated appeal, we do not believe that "a mistake has been committed," see id. (denial of section 3B1.2 reduction not clearly erroneous when defendant's participation "entailed far more than one isolated drug sale and possession" as defendant asserted), and the district court did not err by relying on testimony given by Shine's co-conspirators in other proceedings. The government announced in its objections to the PSR that it thought the court should consider the testimony of and statements given by Shine's co-conspirators. Shine did not object. See id. at 4-5 (sentencing court's reliance on testimony from trial of co-conspirators to deny reduction does not violate Confrontation Clause); see also United States v. Weaver, 906 F.2d 359, 360 (8th Cir. 1990) (per curiam) (reliance on uncorroborated hearsay permissible if defendant given opportunity to rebut evidence).
 
 
 21
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota