# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-2673

———————————————

United States of America,

*Plaintiff - Appellee*,

v.

Geff Yielding,

*Defendant - Appellant*.

————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

————————

Submitted: April 10, 2013
Filed: August 13, 2013
[Unpublished]

————————

Before COLLOTON and SHEPHERD, Circuit Judges, and ROSE[1], District Judge.

————————

PER CURIAM.

   A jury convicted Geffrey A. Yielding of aiding and abetting a violation of the so-called Medicare "anti-kickback" statute, in violation of 42 U.S.C. § 1320a-7b(b)(2)

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, sitting by designation.

and 18 U.S.C. § 2, and aiding and abetting the falsification of a document, in violation of 18 U.S.C. §§ 1519 and 2. This court affirmed the conviction but returned the case to the district court for resentencing. *United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011). Yielding now appeals the judgment of the district court,[2] entered on remand, which imposed concurrent sentences of 51 months' imprisonment for each offense, followed by three years of supervised release, and ordered Yielding to pay $944,995.84 in restitution as a condition of release. We affirm.

I.

Yielding participated in a scheme to manipulate medical supply purchases by Baptist Health Medical Center in North Little Rock, Arkansas, while serving as a surgical and administrative assistant to a neurosurgeon. As we detailed in our prior opinion, Yielding paid a hospital charge nurse to place unauthorized orders for products marketed by a medical services company owned by Yielding's wife, Kelley Yielding. *Id.* at 697-99. Her company issued checks to the nurse totaling more than $54,000 between February 2003 and October 2004. *Id.* at 697. Kelley Yielding herself received commissions on these sales from the products' suppliers, totaling approximately $384,000 during this period. *Id.*

A jury convicted Geffrey Yielding of aiding and abetting a violation of the Medicare anti-kickback statute and aiding and abetting the falsification of a document. The district court sentenced him to serve concurrently 60 months' imprisonment for the anti-kickback conviction and 78 months' imprisonment for the document falsification conviction, and ordered him to pay $944,995.84 in restitution. This court vacated the sentence, concluding that the district court had erred by calculating Yielding's offense level based on the amount of loss sustained by the victims of his

_____

[2]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

scheme, rather than the value of the improper benefit conferred to Yielding. *Id.* at 697, 716. As for restitution, we noted the government's argument that restitution was authorized by 18 U.S.C. § 3663, and that a district court may exercise its discretion to impose restitution as a condition of supervised release under 18 U.S.C. §§ 3583(d) and 3563(b)(2). *Id.* at 718-19. But the record suggested the district court had incorrectly believed that restitution was required by the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, *id.* at 719, so we remanded for further proceedings.

At a second sentencing hearing, the probation office recommended a guideline range of 51 to 63 months' imprisonment, based on an improper benefit to Yielding of $383,734.88. *See* USSG § 2B4.1(b)(1); USSG § 2B1.1(b)(1)(G); *Yielding*, 657 F.3d at 716-17. Yielding objected on the ground that the improper benefit was less than $200,000; on that basis, he urged an advisory range of 41 to 51 months' imprisonment. When the district court indicated an inclination to impose a term of 51 months no matter which range was applicable, the government acquiesced in Yielding's position.

Yielding then urged the court to sentence him "at a lower range of the guidelines." Pointing to statistics contained in a report issued by the United States Sentencing Commission, he argued that he had already served nearly twice the average sentence imposed for the crimes of bribery or obstruction of justice. The government responded that these figures were based on "generic convictions," not necessarily convictions related to health care fraud. The district court followed its inclination and imposed concurrent terms of 51 months' imprisonment for each offense.

On the issue of restitution, Yielding asserted that he would "never make enough money" to satisfy a restitution order. He acknowledged that he had secured employment to begin upon his release, but argued that he was "broke." The district

court noted that "it would be difficult" for Yielding to repay his victims in full, unless he "does really, really well," but the court said it was "not going to put that past him." The court then determined that Yielding would be able to afford monthly restitution payments of 10 percent of his gross wages upon returning to work. The court tabulated the financial harm to each victim and again arrived at a total of $944,995.84. It ordered Yielding to pay this sum as a condition of his supervised release.

## II.

Yielding alleges that the district court committed three procedural errors in connection with the term of imprisonment. He did not raise any of these objections in the district court, so we apply a plain error standard of review. *United States v. Hill*, 552 F.3d 686, 690 (8th Cir. 2009). To gain relief, Yielding must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Yielding first contends that the district court considered itself bound by the sentencing guidelines, arguing that it "determined Yielding's sentence on a straight guideline basis as if that was mandated." While it would be error to treat the guidelines as mandatory, *Gall v. United States*, 552 U.S. 38, 51 (2007), the court did not do so here. The district court invited arguments "with regard to departure, mitigation, variance factors," and explained that it had concluded in prior proceedings that the "departure factors" did not apply, but still entertained Yielding's arguments for a variance. The court noted that although it enters the proceeding with an idea about what might be the right outcome, the arguments of counsel sometimes persuade the court to go a different direction. In this case, the court explained that when the probation office recommended an advisory range of 51 to 63 months, the court was "prone" to select a sentence of 60 months. But after the parties agreed on a range of 41 to 51 months, the court settled on 51 months. This discourse satisfies us that the

court did not treat the guidelines as mandatory, but rather was simply unpersuaded by the arguments of counsel that a variance was warranted. The record thus reveals no plain error warranting relief.

Yielding next claims that the district court failed adequately to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The core of his argument seems to be that the district court did not evaluate "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). Because the Sentencing Commission weighed this consideration when drafting the sentencing guidelines, however, the district court "necessarily gave significant weight and consideration" to this need by correctly calculating Yielding's guideline range. *Gall*, 552 U.S. at 54. And the district court was not required to vary below the advisory range based on statistics proffered by Yielding, especially when he made no showing that the data were based on cases that involved similar conduct by defendants with similar records.

Yielding also argues that the district court erred by failing adequately to explain the sentence imposed. But when a judge decides to apply the guidelines to a particular case, circumstances can make clear that the judge has adopted the reasoning of the Sentencing Commission and found the present case typical. *Rita v. United States*, 551 U.S. 338, 356-57 (2007). If so, then the judge "normally need say no more," *id.* at 357, especially where, as here, the defendant lodges no objection to the adequacy of the statement of reasons. This was a second sentencing proceeding in the same case; many issues had been thoroughly ventilated at the first. Yielding received the benefit of a generous guideline calculation on remand, and the court sentenced within the advisory range. There was no plain error in the court's explanation.

Finally, Yielding claims that the district court abused its discretion by ordering him to pay restitution as a condition of his supervised release. *See* 18 U.S.C. §§ 3583(d) and 3563(b)(2). Yielding contends that his case is "on all fours" with

*United States v. West*, 942 F.2d 528 (8th Cir. 1991), where a district court failed to give proper consideration to a defendant's financial circumstances when it ordered him to repay $95,062 within one year of release, despite the defendant's negative net worth and income after expenditures of $225.52 per month. *Id.* at 532-33.

This case is distinguishable from *West*. There is no *per se* rule against ordering restitution when a defendant is indigent, especially when the defendant has future earning potential. *United States v. Manzer*, 69 F.3d 222, 229 (8th Cir. 1995). The record established that Yielding was likely to be employed immediately upon his release, and the court voiced confidence in Yielding's future earning ability. Unlike the district court in *West*, the court here imposed modest payments calculated based on Yielding's gross monthly earnings, and declined to impose a deadline by which Yielding must pay the total sum. The restitution order was not an abuse of discretion.

\*　　\*　　\*

The judgment of the district court is affirmed.

_____